[Civ. No. 23670.    First Dist., Div. Two.    Sept. 20, 1967.]

ROY R. WOODS et al., Plaintiffs and Respondents, v. BESS BRADFORD, Defendant and Appellant.

Ruffo & Oneto, Donald McNeil, Robert S. Sturges and Robert P. McNamee for Defendant and Appellant.

Donald H. Smith and Kenneth A. Ehrman for Plaintiffs and Respondents.

AGEE, J.—This is an appeal by defendant Bess Bradford from an interlocutory judgment of partition wherein it is adjudged that she and plaintiffs (hereafter "Woods") each own, as tenants in common, an undivided one-half interest in a 2,133-acre parcel of land in San Benito County and that said property should be sold and the net proceeds divided equally. (See Code Civ. Proc., § 752 et seq.)

While claiming the right to ownership of the *entire* parcel, Bess agrees that, if her claim is not upheld, the subject property "is of such shape, differing quality, and such nature, that partition cannot be made without great prejudice to the parties, and the parties would most benefit if the property were sold." (Cf. Code Civ. Proc., § 763.)

On November 15, 1961 Bess filed a separate maintenance action in Santa Clara County against her husband, Earle Bradford, and he cross-complained for divorce. In her complaint, Bess alleged that their community property consisted of a number of specified items, including the San Benito County ranch and a ranch in Santa Clara County. The record title of the subject property was in their names as joint tenants and Earle denied that it was community property.

Following a contested trial, Earle was granted an interlocutory decree of divorce on April 3, 1963. It was adjudged therein, *inter alia,* that the San Benito County ranch was the community property of the parties.

Said decree contains the following provision: "That the community real property consisting of 2133 acres of land in San Benito County . . . shall be sold and the net proceeds equally divided between the parties."[1] A final decree of

---

[1] The last paragraph of Civil. Code section 146 provides: "Whenever necessary to carry out the purpose of this section, the court may order a partition or sale of the property and a division or other disposition of the proceeds."

divorce, containing the same provision, was entered on April 13, 1964. No provision was made in either decree as to the time or manner of carrying out such sale.

Woods acquired his one-half interest by deed from Earle, executed May 12, 1964. Woods filed this partition action in San Benito County on March 25, 1965. Bess filed an answer therein on June 1, 1965.

In her answer Bess alleges: "Prior to the trial of the domestic litigation . . . on January 21, 1963, my husband and I entered into an oral agreement regarding the disposition of the real property holdings we had."

Under this alleged oral agreement, which apparently *foresaw* the court's equal division of the San Benito County ranch, Earle was to convey his one-half interest to Bess "after the trial," so that "I would then receive the San Benito County ranch, which is the real property which is the subject of this action, as my own. . . ."

The agreement is further alleged to provide that, as compensation for such conveyance, Earle was to receive a credit equal to one-half of the value placed by the parties on the subject property and that payment of such credit would be made when the sale of another ranch, which was located in Santa Clara County, was made.

The trial judge in the instant action became concerned with whether such an alleged agreement had been brought to the attention of the trial court in the separate maintenance divorce action. None of the counsel then present had participated in the earlier action and it was agreed that the trial judge could read and consider the reporter's transcript therein.

This transcript reveals that Bess made no claim of any such agreement at the trial of the prior action, even though she now asserts that such an agreement was then in existence.

The efforts of Bess' attorney in that action with respect to the San Benito County ranch were directed to proving that it was community property. In his summation to the court, Bess' attorney said: "Now, with respect—there is only one other parcel of property involved and that is the San Benito County property which consists of approximately 2200 acres, that by deed stands in the name of Mr. and Mrs. Bradford as joint tenants. . . . And I feel in light of the testimony of Mrs. Bradford, . . . it should be viewed by this Court as actually and in effect and in substance a community asset."

After the trial judge had read the transcript of the earlier

trial, he commented: ''The whole thing was put up to the Court in Santa Clara County, all of their properties, to make a determination. The Court made the determination.''

The trial judge referred to and relied upon the case of *Krier* v. *Krier*, 28 Cal.2d 841 [172 P.2d 681]. There the court said: ''In the prior separate maintenance action Mrs. Krier sought and procured an adjudication with respect to her interest in the property. She here seeks a second adjudication relative to her interest in the same property. It is settled, however, that a judgment in a prior action between the same parties on the identical cause of action is res judicata, and a bar to a second suit thereon, not only as to issues actually determined therein but also as to issues necessarily involved. [Citations.] And even though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination. [Citations.]

''Having claimed the property in the prior action solely as community property and having procured a decree therein based on its character as such, Mrs. Krier is precluded from seeking in this later action another award thereof based on an entirely different interest (homestead or otherwise) existing, but unclaimed, at the time of the earlier adjudication. Under the circumstances, *she was required to advance her entire interest*, whether community or homestead, or both, in order to permit the court to make an effective and complete adjudication of the respective interests of the parties. [Citation.] Not having done so, she cannot relitigate the matter, whether it be held that the two suits involved the same cause of action insofar as they concerned her interest in the property, or merely involved a common issue as to her interest in the property.'' (28 Cal.2d at pp. 843-844; italics added.)

Here, Bess did not ''advance her entire interest'' in the subject property in the prior action. At the very time of the trial of that action Bess claims that she already had reached a property settlement agreement with Earle respecting the disposition of the San Benito County ranch.

■ Having procured a decree in the prior action as to the community character of the subject property and the extent of her interest therein, Bess cannot now seek in this later action an additional award based upon an agreement ''existing, but unclaimed, at the time of the earlier adjudication.'' (28 Cal.2d at p. 844.)

In order to avoid the application of *Krier, supra,* her counsel stated to the court: "Well, the effect of the agreement was just to give her the first right to buy from him, which is his [Earle's] interest."

This interpretation would not improve Bess' legal position, since it is basic that an option to purchase real property falls within the statute of frauds and therefore must be in writing. (Civ. Code, § 1624, subd. 4; *Pacific etc. Dev. Corp. v. Western Pac. R.R. Co.,* 47 Cal.2d 62, 68 [301 P.2d 825].)

The ultimate ruling of the trial court was to deny the offer of Bess' counsel to prove the existence of the oral agreement alleged in her "Affirmative Defense" to Woods' complaint herein.

The provision in Civil Code section 172a, that the wife must join with the husband in executing any instrument by which an interest in community real property is sold, has no application here.

The finding that the subject property was the community property of the parties was necessary in order to give the court jurisdiction over its disposition. Bess attempts to use this finding to void the conveyance from Earle to Woods.

The relationship of husband and wife had been terminated, by final decree of divorce, at the time of such conveyance. However, the parties remained under order to sell the property. The court did not specify to whom or in what manner such sale was to be made.

Earle was willing to sell but Bess was not. Woods was willing to buy. Accordingly, Earle sold Woods all he had to sell, an undivided one-half interest in the subject property. This is so recited on the face of the deed from Earle to Woods.

Even if the deed had purported to be a grant of the whole parcel, it would be effective *only* as to Earle's undivided one-half interest. Woods has never contended otherwise.

"A deed to community property, executed without the wife's consent, while ineffective as to her interest, is valid and binding as to the husband's one-half interest." (*Pretzer* v. *Pretzer,* 215 Cal. 659, 661 [12 P.2d 429]; *Trimble* v. *Trimble,* 219 Cal. 340, 344 [26 P.2d 477]; *Heuer* v. *Heuer,* 33 Cal.2d 268, 271 [201 P.2d 385].)

Bess also sought during the trial herein to make a collateral

attack upon the validity of the interlocutory and final decrees of divorce. This was an issue not raised by the pleadings and, furthermore, her counsel stated that Bess had filed an action in Santa Clara County to set aside both decrees ''on the basis of extrinsic fraud.''

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied October 20, 1967.