[Civ. No. 26150. Fourth Dist., Div. One. Dec. 20, 1982.]

ANDRADE DEVELOPMENT COMPANY, Plaintiff and Appellant, v. ARNOLD H. MARTIN et al., Defendants and Respondents.

**COUNSEL**

Crossland, Crossland, Chambers & MacArthur, Paul T. Chambers and Bruce A. Neilson for Plaintiff and Appellant.

Adams, Levin, Kehoe, Bosso, Sachs & Bates, Robert E. Bosso, G. Dana Scruggs III, Joseph C. Melino, Cropper, Kollenborn & Smith and Dennis Kollenborn for Defendants and Respondents.

## OPINION

**COLOGNE, Acting P. J.**—Andrade Development Company (Andrade) appeals an adverse judgment in its action for breach of a real estate sales contract.

In its original complaint, Andrade sought specific performance or, alternatively, damages from the sellers, Arnold and Ardismae Martin. The court sustained a demurrer without leave to amend as to Ardismae because the realty in question was community property and Ardismae never signed the sales contract. Andrade's amended complaint alleged a breach of contract by both Arnold and Ardismae and sought partial specific performance as to Arnold's undivided one-half interest or, alternatively, damages. In a separate cause of action, the amended complaint sought damages against defendants Thomas E. Starr, Dessi Starr, Paul Evans and Mary P. Evans (Starr) for inducing the Martins to breach the contract with Andrade and sell the property to them.

Ardismae cross-complained for cancellation of the unsigned contract, and Starr cross-complained for slander of title. The court granted Starr's motion to expunge a lis pendens on the property and also granted an order striking all references to specific performance in Andrade's amended complaint.

The trial of the case was bifurcated to decide initially whether Civil Code section 5127[1] bars damages and partial specific performance and, if so, whether the contract should be cancelled.

The parties stipulated to the facts: the property in question was the community property of Arnold and Ardismae; the contract to sell is contained in the escrow instructions and was signed by Andrade and Arnold, but not by Ardismae though there was a signature line for her; Arnold did not represent himself to be the agent of Ardismae nor was such agency implied by Arnold; Arnold refused to perform; Andrade's purchasing agent was a real estate broker; and for purposes of argument only, Andrade performed all conditions precedent to the seller's performance. The parties also stipulated to and attached a copy of the escrow instructions, which constitutes the "contract" between Andrade and the Martins. The contract executed by Andrade makes clear Andrade was aware the property was owned by Arnold and Ardismae as husband and wife.

---

[1] All statutory references are to the Civil Code unless otherwise specified.

The court declared the contract null and void, holding in favor of the Martins, and it entered judgment Andrade take nothing by its complaint. To harmonize the conclusions of law with the judgment, Andrade moved to vacate the judgment and enter a different judgment, acknowledging the second cause of action against the other defendants remains for adjudication. Defendants' counsel stipulated the judgment could be amended to read in part: Andrade "take nothing by its complaint *from Arnold H. Martin,*" but the amended judgment was never entered. It is clear, however, the court and parties intended to preserve Andrade's second cause of action against Starr.

Andrade's first three issues relate to the contention the court misapplied section 5127. These issues are the court erred in striking any reference in the amended complaint to specific performance, expunging the lis pendens and holding Andrade could not recover damages from Arnold.

Section 5127 reads: "Except as provided in Sections 5113.5 and 5128, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but *both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered;* provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided, also, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed prior to January 1, 1975, and that the sole lease, contract, mortgage, or deed of either spouse, holding the record title to community real property to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed on or after January 1, 1975. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of either spouse alone, executed by the spouse alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate, and no action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, which was executed by the husband alone and filed for record prior to the time this act takes effect, in the recorder's office in the county in which the land is situate, shall be commenced after the expiration of one year from the date on which this act takes effect." (Italics added.)

The language of this section is derived from that found in the older, now repealed, section 172a dating back to 1917. The history of this provision

reveals the evolution of women's more equal status under California Community Property Law. The section as it now reads gives either spouse management and control of the community real property but requires both to join in executing any instrument by which the community real property is sold. This requirement is subject to the rule that if the property stood in the husband's name alone and was deeded to a buyer in good faith without knowledge of the marriage relationship before January 1, 1975, the transfer was presumed valid. After that date, if title stood in either spouse's name alone, the transfer to the good faith buyer without knowledge of the marriage relation by that spouse was presumed valid. Action to avoid any such sale by the nonsigning spouse had to be commenced within one year.

■ The issue before us is: what is the effect of a husband's execution of escrow instructions which purport to sell the community property of husband and wife where the wife does not sign the document.

We believe the nonconsenting spouse should be fully protected in such efforts to dispose of community real property and hold the contract is subject to a timely action during the marriage to avoid it, a corollary of which is no specific performance or damages are recoverable as to any part of the effort to dispose of the community real property. Any effort to dispose of this property will adversely affect the spouses' interests. Disposal of community property or partition of the spouses' interests should be allowed only where the spouse consents or where a court sitting in equity can provide an equitable result as in dissolution or probate proceedings.

This case is governed by *Britton* v. *Hammell* (1935) 4 Cal.2d 690 [52 P.2d 221]. In *Britton,* the court explained the reasons for compelling the return of the entire community real property conveyed without spousal consent. In that case, the husband transferred community property to a third person whom he believed was his wife in a second marriage, and the real (first) wife sought during the marriage to have the deed declared a nullity since it did not bear her signature. The court said (at pp. 692-693): "There appears to be no case in this state which determines the extent of the rights of the wife who, during the marriage, attacks a gift of community property made by the husband to a third party. [Citation.] The decisions, reviewed in *Trimble* v. *Trimble, supra,* all involve actions brought by the wife after the husband's death.

"There is, in our opinion, a sound reason why the wife, suing during the marriage, should be permitted to set aside the gift of community property in its entirety. If she were only permitted to recover a one-half interest, and that one-half interest recovered were to remain community property, it would still be subject to the husband's control, with the result that the protection given the wife by the statute would be substantially nullified. If, on the other hand, the

one-half interest recovered were regarded as her separate property, there would be a resulting division or partition of the community property during the marriage by the husband's arbitrary act, without consent of the wife. Our law does not contemplate this means of dividing the community property. It provides only for division after dissolution of the community by death or divorce, or by transfer by the husband with the wife's consent to a third person or to the wife.

"It is true that there is also no express provision in our statutes to cover the situation where the wife sues after the husband's death. The case of *Trimble* v. *Trimble, supra,* [219 Cal. 340 (26 P.2d 477)] and other decisions holding that recovery in such case is limited to one-half the property, must rest, ultimately, upon the theory that the husband had the right, at his death, to give away one-half by will; and that his gift before death, if limited in effect to one-half the property transferred, could be viewed as the equivalent of a provision by will. [Citation.] But this theory cannot justify a similar result where the wife brings her action during the marriage. The husband has no right, prior to death, to give away any of the community property without the wife's consent; and the gift cannot be regarded as the equivalent of a will because the time for effective exercise of the power of testamentary disposition has not yet arrived. Suppose, for example, the parties are divorced for the adultery or extreme cruelty of the husband, and the court, as it must, awards the greater part of the community property to the wife. [Citation.] Should the husband's prior gift, in violation of the law, be permitted to defeat this power of the court to compensate the innocent party?

"Enough has been said to show clearly that the full measure of protection of the wife's rights during the existence of the community can only be gained by restoring the entire property to the community. This being so, the prior cases limiting recovery to one-half are not inconsistent, because they all hold, in substance, that the wife's rights after death of the husband are fully protected by that limited recovery." The reasons for the result reached in *Britton* are as sound today as in 1935 and should be applicable whether directed to husband or wife. Neither the fact both husband and wife now share management and control nor the fact *Britton* involved a gift, not a sale, of real property affords a basis for disregarding the *Britton* reasoning and rule.[2]

---

[2]The rule, without reflecting statutory amendments effective January 1, 1975, is correctly stated in 1 Bowman, Ogden's Revised California Real Property Law (Cont.Ed.Bar 1974) section 8.28, page 323, as follows: "An instrument by which community real property or any interest in it, acquired after July 26, 1917, is leased for a period of more than one year or sold, conveyed, or encumbered without the wife's consent is voidable but not void and, subject to the limitations in (1) and (2) below [not relevant to this case], may be set aside *in its entirety* by the wife *during her husband's lifetime,* and after his death may be set aside as to one half the property or interest." (Italics added; see also 1 The Cal. Family Lawyer (Cont.Ed.Bar. 1962) § 4.34, p. 130.)

*Britton* confirms the older case of *Waldeck* v. *Hedden* (1928) 89 Cal.App. 485, 490-492 [265 P. 340], holding the agreement to convey community real property is unenforceable without the wife's signature. There, too, the court found the buyer was aware of the marriage relationship of the parties so there was no presumption of validity. Since the wife had not joined, specific performance could not be compelled. *Waldeck* also concluded it would be a drastic remedy to compel the parties to accept cash for half of the property which the signing party could not convey (*id.*, at p. 493). This was especially difficult there where land trades were involved and a very different contract would be the result.

The rule was more recently approved in *Vaughan* v. *Roberts* (1941) 45 Cal.App.2d 246, [113 P.2d 884], where the court stated, at page 259: "The court also found that the note and trust deed were neither signed nor authorized to be signed by Mrs. Vaughan, and that the instruments which affect the title to real property were therefore void. We are of the opinion that is a correct conclusion of law . . . .

"*. . . . . . . . . . . . . . . . . . .

"It has been held that a conveyance of community real property by the husband, without the authorization of his wife, contrary to the provisions of section 172a of the Civil Code, is at least voidable in a suit by the wife during the marriage. (*Britton* v. *Hammell*, 4 Cal.(2d) 690 . . . .)"

We find it difficult to reconcile the dicta found in *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869 [79 Cal.Rptr. 381]. In that case, Gantner's predecessor in interest conveyed real property to George and Margaret Lemler and Helmer Johnson. Johnson, in default, years later reconveyed his interest to the original seller under circumstances found to be for consideration. Both the original sales agreement and the reconveyance deed were in Johnson's name alone even though he purchased his interest with community funds. The agreement gave the original sellers the right to repossess on default. Johnson's wife sought to invalidate the reconveyance, claiming she never signed the deed and it was a gift of community property. The court found a transfer of community property for consideration by one of the spouses is valid as to the signing spouse's one-half interest (*id.*, at pp. 877, 878).

There are important facts distinguishing *Gantner* from the present case, though we cannot reconcile its analysis of the cases cited.[3] In *Gantner*, the sales

---

[3]For example, as authority for the proposition that "a deed to community real property for a valuable consideration, executed without the wife's consent, while ineffective as to her interest, is valid and binding as to the husband's half interest" (*id.*, 274 Cal.App.2d at pp. 876-877), *Gantner* cites *Heuer* v. *Heuer* (1949) 33 Cal.2d 268, 271 [201 P.2d 385], and *Woods* v. *Brad-*

agreement and reconveyance were in the husband's name alone and he assumed the role of the sole responsible seller. In the present case, on the other hand, the sales contract indicated both Arnold and Ardismae were owners-sellers and it was clear both parties were to be grantors. The court in *Gantner* specifically limited its discussion to the "rules applying to transfers of community property by the husband as *manager of the community property.*" (*Id.*, at p. 876; italics added.) But the governing statute, section 5127, has been amended since *Gantner* to provide both spouses with equal management and control of community real property. It is highly questionable whether the rules espoused in *Gantner* survive after the amendments to section 5127 which have significantly altered former concepts of the spouses' respective rights and responsibilities concerning their community property. We prefer to favor the rule that protects the spouses from the acts of one mate which defeat the community interests in real property held by them.

Damages for breach of contract might be appropriate under general contract principles if the title were in the husband's name alone and he led the buyer to believe he was able to convey good title. Under the stipulated facts, that is not the case here, since there was clear indication in the contract the wife was a necessary party and no representation was made the husband spoke for her or would deliver her consent. The court was thus within its authority to strike the references to specific performance in the amended complaint, expunge the lis pendens and award no damages as against Arnold, and we affirm the judgment in his favor.

Before addressing the final issue, it is appropriate to note what we are *not* dealing with.

First, we are not dealing with the case where the property has not been found to be community property. Many cases deal with property held by husband and

*ford* (1967) 254 Cal.App.2d 501, 505 [62 Cal.Rptr. 391]. *Heuer* involved different facts, i.e., a transfer without consideration made by the husband alone before divorce (*id.*, 33 Cal.2d at p. 270), and the former spouse, suing after she was validly divorced, agreed during the appeal her "satisfaction if her one-half community interest in the property involved be restored to her" (*id.*, 33 Cal.2d at p. 271). *Woods* also involved different facts, i.e., a transfer of only an undivided one-half interest made after divorce pursuant to court order as to which section 5127 (then § 172a) "has no application here" (*id.*, 254 Cal.App.2d 501, 505). As *Britton, supra*, indicates, where a dissolution of marriage occurs, other considerations relating to the division of community property become applicable. In *Gantner*, however, there was involved no dissolution of marriage which would make appropriate the reliance on *Heuer* and *Woods*. *Heuer*, moreover, was undoubtedly influenced by the former wife's stipulation during appeal to her satisfaction by restoration of a one-half interest only.

*Mitchell* v. *American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220 [167 Cal.Rptr. 760], relies on *Gantner* and similarly is irreconcilable with our view of the authorities. The rationale there is premised on the argument that if the husband can execute a note upon which liability could attach as a community debt, the property would be subject to execution for the debt. We counter by suggesting certain exemptions from execution, including homestead protections, would preserve the interest of the spouse not otherwise available.

wife but which is not identified as community property. *Angell* v. *Rowlands* (1978) 85 Cal.App.3d 536 [149 Cal.Rptr. 574], for example, dealt with a sale of real property held by husband and wife in joint tenancy. The court applied general contract principles about binding nonsigning parties without reference to section 5127 or the status of the property as community property (*id.*, at pp. 540-542). (See also *Kaufman* v. *Bell* (1928) 89 Cal.App. 610, 611-612 [265 P. 317].) Here, the property was held as community property and section 5127 must be applied.

Second, we are not dealing with the sale to a purchaser who acquires the interest in good faith without knowledge of the marriage relationship. In *Cushing* v. *Levi* (1931) 117 Cal.App. 94 [3 P.2d 958], the buyer had no knowledge of the marriage relationship and the court held since there was evidence of bad faith on the wife's part, the trial court could on proof of adequate consideration and a right to conveyance deny specific performance and award money damages (*id.*, at pp. 102-103).

Also in *Waldeck* v. *Hedden, supra,* 89 Cal.App. 485, 491-492, the court held where the buyer is aware of the marriage relationship, he is not protected by the provision of former section 172a [now § 5127] granting a presumption of validity to the transfer so specific performance cannot be decreed[4] either for the whole or the husband's one-half of the property. Here, Andrade signed escrow instructions which identified the Martins as husband and wife, so he knew of their relationship. Thus, the validity of the sale is not presumed as authorized under these special provisions of section 5127.

Third, we are not dealing with transfers of community property interest followed by the death of the transferor spouse where a court of equity construes the contract to be an effort to effect testamentary disposition of the husband's interest in community property (see *Trimble* v. *Trimble* (1933) 219 Cal. 340 [26 P.2d 477], described as such in *Britton* v. *Hammell, supra,* 4 Cal.2d 690, 692).

Fourth, we are not dealing with the seller's bad faith in attempting to avoid an obligation which might suggest equitable remedies (see *Kaufman* v. *Bell, supra,* 89 Cal.App. 610 [265 P. 317]).

Fifth, we are not dealing with transfers which are part of divorce proceedings and with respect to which a court, sitting in equity, can order a division of community property under its jurisdiction. (See *Heuer* v. *Heuer, supra,* 33 Cal.2d 268, 271-272; *Pretzer* v. *Pretzer* (1932) 215 Cal. 659, 661 [12 P.2d 429].) In those cases, the courts have allowed a wife, who did not sign the transferring

---

[4]Under the special facts there, the court suggested money damages would be appropriate since the husband had led the plaintiff to believe he could perform certain acts when, in fact, he could not do so.

instrument, to obtain her one-half of the property as an effective division which would otherwise be accomplished in the divorce. In *Woods* v. *Bradford, supra,* 254 Cal.App.2d 501, 505, after a divorce where the parties had been ordered to sell the parcel of real property and the former husband, without the former wife's signature or consent, sold his interest, the court upheld the sale as to his half.

Andrade's final issue is the court erred in rendering its judgment as to all parties in the first phase of the bifurcated trial: i.e., Andrade "take nothing by its complaint."

When Andrade attempted to have the court revise its judgment to read Andrade "take nothing by its complaint *from Arnold H. Martin,*" the parties stipulated the judgment could be so amended. The Starr and Evans defendants do not contest this issue. The judgment should be amended so as to preserve Andrade's second cause of action for inducing the Martins to breach a contract.

The judgment is amended to read, "Andrade take nothing by its complaint from Arnold H. Martin and Ardismae Martin." As amended, the judgment is affirmed.

Wiener, J., and Moon J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 29, 1983.

---

*Assigned by the Chairperson of the Judicial Council.