[Civ. No. 30159. Fourth Dist., Div. Three. Apr. 23, 1984.]

MARJORIE HARPER, Plaintiff and Respondent, v.
JOHN L. RAYA et al., Defendants and Appellants.

JOHN L. RAYA, Plaintiff and Appellant, v.
MARJORIE HARPER, Defendant and Respondent.

COUNSEL

Agapay, Levyn & Halling, Joe M. Agapay, Jr., and Glen Dresser for Defendants and Appellants and Plaintiff and Appellant.

Fazio, McDonnell, Briggs, Ward & Holland, Neil M. Schwartz and Burton H. Ward for Plaintiff and Respondent and Defendant and Respondent.

## OPINION

**CROSBY, J.**—Husband and wife appeal award to husband's former mistress of a life estate in their community property investment beach house.

I

John L. and Modesta Raya have been married since 1944. He met and began an extramarital relationship with Marjorie Harper in 1962. Harper was at all times aware of Raya's marital status. In 1969 Raya purchased a single family residence in San Clemente as an investment. Title was taken in his name only, but mortgage payments were made with community property earnings.[1] Harper sold her own home in 1971 and at Raya's suggestion moved into the San Clemente house. She performed routine maintenance and upkeep on the home, but paid no taxes, insurance premiums, or major maintenance expenses, nor did she make the mortgage payments.

Harper claimed Raya told her she could live in the house for as long as she wanted, and in 1972 he gave her a letter addressed to his daughter and signed by him, stating in part, "This particular request I make of you because I know that you would do as I request regardless of your personal feelings. Marjorie W. Harper is to be allowed to live in the beach house rent free as long as she wishes." There were no other written memoranda concerning the terms of Harper's residence in the home until October 1981, when Raya served her with written notice changing the "terms of [her] tenancy" to provide for rent of $1,000 per month.

Harper did not comply with the terms of Raya's rent notice, and he brought an unlawful detainer action against her in December 1981. She countered with a complaint against both Rayas for declaratory relief, quiet title, specific performance of the oral agreement to convey a life estate, and breach of that agreement. The two cases were consolidated for court trial.

Harper prevailed in both actions. The court determined she was entitled to specific performance of Raya's oral agreement to convey a life estate and

---

[1]There is no evidence in the record as to the source of funds for the down payment.

the agreement was not subject to statute of frauds, because of the 1972 letter and Harper's "continued performance of everyday and routine maintenance of the [property] and by virtue of her provision of love, affection and companionship to RAYA, so long as RAYA desired." The court found the agreement violated Civil Code section 5127;[2] but Mrs. Raya, who did not learn of her husband's agreement until Harper filed suit, was nevertheless "estopped from and/or waived her right to set aside the conveyance on the grounds of illegality under Civil Code section 1667" because she failed to initiate her own legal action "to strike or nullify the oral agreement . . . ." The court ordered Raya, but not his wife, to execute "a grant deed granting plaintiff HARPER a life estate in said property, which deed shall specify that RAYA is responsible for all taxes on said real property, all fire insurance, theft insurance and liability insurance pertaining to said property, and all maintenance expenses, other than cosmetic maintenance."

■ The Rayas raise several issues on appeal, but we consider only whether an oral agreement by one spouse to convey a life estate in the marital community's real property without the other spouse's consent is specifically enforceable by a donee who had knowledge of the marriage relationship. We find it is not, and consequently do not consider the Rayas' other contentions.

## II

A life estate may be created "by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting . . . or declaring the same . . . ." (Code Civ. Proc., § 1971.) A statutory ex-

---

[2]Civil Code section 5127 provides, ". . . both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided, also, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed prior to January 1, 1975, and that the sole lease, contract, mortgage, or deed of either spouse, holding the record title to community real property to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed on or after January 1, 1975. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of either spouse alone, executed by the spouse alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate, and no action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, which was executed by the husband alone and filed for record prior to the time this act takes effect, in the recorder's office in the county in which the land is situate, shall be commenced after the expiration of one year from the date on which this act takes effect."

ception to the requirement of a written instrument is found in Code of Civil Procedure section 1972, which cautions that section 1971 "must not be construed to . . . abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof."

There is a competing policy in the case of conveyances of community property which controls in this case, however, which does "abridge" the court's equitable power to compel specific performance. The policy has been described as follows: "We believe the nonconsenting spouse should be fully protected in such efforts to dispose of community real property and hold the contract is subject to a timely action during the marriage to avoid it, a corollary of which is no specific performance or damages are recoverable as to any part of the effort to dispose of the community real property. Any effort to dispose of this property will adversely affect the spouses' interests. Disposal of community property or partition of the spouses' interests should be allowed only where the spouse consents or where a court sitting in equity can provide an equitable result as in dissolution or probate proceedings." (*Andrade Development Co.* v. *Martin* (1982) 138 Cal.App.3d 330, 334 [187 Cal.Rptr. 863].) In *Andrade,* the husband alone signed escrow instructions to sell community real property. The buyer was aware the property was owned by both spouses. The husband then refused to go through with the sale and the buyer sued for specific performance or, in the alternative, damages for breach of contract. The trial court determined that Civil Code section 5127 barred damages and specific performance, and the appellate court affirmed.

*Andrade* involved a *written* contract to convey community real property, and Civil Code section 5127 (see fn. 1, *ante*) clearly applied. Under that section, if the transfer occurs without the knowledge or consent of the spouse who is not record owner of the property, but the transferee is aware of the marital relationship, the nonsigning spouse may nullify the conveyance. (See *Byrd* v. *Blanton* (1983) 149 Cal.App.3d 987 [197 Cal.Rptr. 190].) Here, Raya's agreement to convey a life estate to Harper was not written, but *oral.* Thus, while Civil Code section 5127 is not directly applicable, its rationale, as explained in *Andrade,* is, and precludes specific performance of Raya's purported agreement to convey in derogation of the community's interest as well as damages to Harper for breach of contract.[3]

---

[3] The court's finding the oral conveyance violated section 5127 was incorrect. There can be no violation of section 5127 until one spouse purports to convey community real property by *written* instrument. Here, that did not occur until the court ordered Raya alone to execute the grant deed to Harper. Moreover, a finding of illegality under Civil Code section 1667 is unnecessary to invoke the provisions of section 5127. Rather, the transfer may be set aside merely by proving one spouse did not consent to it.

## III

Perhaps anticipating this conclusion, Harper alternatively argues Mrs. Raya may invalidate the conveyance only to the extent it purports to convey her one-half of the community's interest in the real property. Harper relies on *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869 [79 Cal.Rptr. 381], where the appellate court noted a husband's transfer of community real property for consideration without his wife's consent is valid as to the husband's one-half interest. (*Id.*, at pp. 876-877.)

*Gantner* also involved a written contract to convey. We have found no language in Civil Code section 5127, or its predecessor, Civil Code section 172a, which justifies the distinction between gift transfers and conveyances for consideration. *Andrade Development Co.* v. *Martin, supra,* 138 Cal.App.3d 330 expressly rejects this artificial distinction: "It is highly questionable whether the rules espoused in *Gantner* survive after the amendments to section 5127 which have significantly altered former concepts of the spouses' respective rights and responsibilities concerning their community property. We prefer to favor the rule that protects the spouses from the acts of one mate which defeat the community interests in real property held by them." (*Id.*, at p. 337.) So do we. Thus, for the reasons detailed in *Andrade,* Harper is not entitled to either specific performance or damages. (*Id.*, at p. 334.)

## IV

■ Judgment for Harper in Raya's unlawful detainer action must be affirmed, however. Raya could have pursued actions in quiet title or forcible detainer (Code Civ. Proc., § 1160, subd. 1). But Harper was never a "tenant" in possession and the remedy of unlawful detainer was simply not available. Raya's unilateral attempt to create a landlord-tenant relationship out of the former arrangement by a somewhat unchivalrous demand for rent could not succeed; landlords and tenants, like husbands and wives, must commence their legal relationship by mutual consent.

Those portions of the judgment in No. 370421 awarding Harper a non-assignable life estate in the real property described as "Lot 27, in Block 17 of Tract No. 793, San Clemente, the Spanish Village, as shown on a map recorded in Book 24, pages 1 to 5 inclusive, of Miscellaneous Maps, in the office of the County Recorder of Orange County, California" and ordering execution of a grant deed in Harper's favor are reversed. In all other re-

spects, the judgment is affirmed. Judgment in Harper's favor in No. 368336 is affirmed. Each side is to bear its own costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 20, 1984.