**In re Ruthie JONES, Debtor.**

**Ruthie JONES, Plaintiff,**

v.

**BERT POTTER BAIL BONDS, Central Jail Bonds, et al., Defendants.**

**Bankruptcy No. LAX 84–10364–GM. Adv. No. 84–52527–GM.**

United States Bankruptcy Court, C.D. California.

July 30, 1985.

---

Walter R. Luostari, Woodland Hills, Cal., for plaintiff.

Gene Burke, Halperin & Zaehringer, Sepulveda, Cal., for defendant.

MEMORANDUM OF DECISION ON COMPLAINT TO CANCEL WRITTEN INSTRUMENT AND TO REMOVE CLOUD ON TITLE

GERALDINE MUND, Bankruptcy Judge.

## I. INTRODUCTION

The key issue in this case is that involved in two conflicting lines of California Appellate opinions, to wit: whether a deed of trust on community property may be set aside in its entirety by the spouse who did not sign it.

## II. FACTUAL BACKGROUND

The apparent relationship between Ruthie and Sylvester Jones (husband and wife) and Bert Potter Bail Bonds (aka Central Jail Bail Bonds) began in January, 1983, when Mr. and Mrs. Jones executed two deeds of trust encumbering their house as collateral for bail bonds. Both of these bonds were later exonerated and the deeds of trust reconveyed.

On June 17, 1983, Sylvester Jones executed another deed of trust in favor of defendant, Central Jail Bail Bonds. This deed of trust was to secure a bail bond issued for the benefit of a third party. Sylvester Jones at the time of execution of the deed of trust and at all other times at issue was married to plaintiff, Ruthie Jones. The legal title to the property encumbered by the deed of trust was held by "Sylvester Jones and Ruthie L. Jones, husband and wife, as joint tenants."

The evidence shows that the down payment for the home, as well as all other payments on the encumbrances, were made from community funds. Plaintiff testified that she never consented to the June, 1983 encumbrance, and did not have knowledge of it until defendant demanded payment upon forfeiture of bail.

The only evidence concerning the intent of the parties as to the nature of the property was the statements of Ms. Jones that she and her husband have always intended the property to be part of the marital community. She further stated that the use of the term "joint tenancy" in the grant deed was inserted by an escrow officer functioning under the instructions of the real estate broker involved in the purchase transaction.

No evidence was proffered to indicate that Ms. Jones had given her husband the actual or ostensible authority to execute the June deed of trust.

## III. ANALYSIS

### A. CHARACTERIZATION OF PROPERTY

The threshold issue is whether the real property held by plaintiff Ruthie Jones and her husband Sylvester Jones, as joint tenants, is in fact community property.

▮▮▮ Record legal title to the property in question is held by plaintiff and her husband in joint tenancy. Generally how record title is held prevails. However, evidence may be introduced to prove a contrary intention and rebut the record title presumption. *Tomaier v. Tomaier*, 23 Cal.2d 754, 146 P.2d 905 (1944). Where the parties, by mutual agreement, intended community property ownership, substantial doubt is raised regarding the presumption that property is held as stated in the deed. *Gudelj v. Gudelj*, 41 Cal.2d 202, 259 P.2d 656 (1953).

▮▮▮ In the case before this Court, the actions of the plaintiff and her husband indicate that they treated the property as community property. The down payment on this land as well as all mortgage payments were made from earnings and social security payments acquired during marriage. There is no showing that Mr. and Mrs. Jones intended title to be held in joint tenancy or were ever consulted or counseled on the type of title that would be recorded. Because there is sufficient evidence that plaintiff and her husband intended the property to be community property, then the presumption of joint tenancy vanishes and the parties hold the property as they so intended. No contrary evidence was presented by the defendant.

Not only did plaintiff and her husband treat this property as community property but the evidence indicates that the defendant, Central Jail Bail Bonds Co., was also aware of plaintiff's rights in the subject property. There were two prior deeds of trust executed as to the subject property in favor of Central Jail Bail Bonds Co. On each prior occasion both Sylvester and Ruthie Jones signed the deeds of trust. Defendant was thus on notice of the marital status of the Joneses and it, as well as the Joneses, apparently treated the subject property as community property. Therefore, the property is community property for the purposes of this decision.

### B. VALIDITY, EXTENT AND EFFECT OF ENCUMBRANCE

▮▮ The second issue that must be decided is whether the deed of trust created a valid lien on all or any portion of the community property. The two lines of California cases which attempt to resolve this issue agree that when a deed of trust is signed by only one spouse, it cannot create a valid lien on the entire community real property. All cases agree that the non-consenting spouse has the authority to void the lien on her[1] one-half interest in the community property. One line of cases also grants her the authority to void the lien entirely as to the community property. Because the interest of the debtor's spouse in community property becomes property of the estate (11 U.S.C. § 541(a)(2)), the Bankruptcy Court has an interest in determining the rights in the entire property of various creditors and claimants.

The conflict in California law centers around the provision in Civil Code § 5127 which grants each spouse the management and control of the community real property, but specifies that both spouses either personally, or by duly authorized agent, must join in executing any instrument by which community real property is encumbered.[2] The question that arises is wheth-

---

**1.** The Court uses the feminine designation for the non-consenting spouse, as all prior cases involve a transfer by the husband.

**2.** The relevant provisions of § 5127, as they apply to the facts of this case, are as follows: "Except as provided in Sections 5113.5 and 5128, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that

er this Section must be interpreted in a literal fashion to mean that no lien is created on community real property unless both spouses execute the deed of trust, and how that relates to the Legislature's obvious intent to give each spouse the right to control and manage community property.

The leading and most frequently cited cases on each side are *Mitchell v. American Reserve Insurance Company,* 110 Cal. App.3d 220, 167 Cal.Rptr. 760 (1980) and *Andrade Development Co. v. Martin,* 138 Cal.App.3d 330, 187 Cal.Rptr. 863 (1982). *Mitchell* takes the position that the transfer by one spouse is valid as to that spouse's one-half interest in the property but may be invalidated by the other spouse as to the other spouse's one-half interest in the property. *Andrade* allows the non-consenting spouse to invalidate the transfer completely. Both cases are similar in that the same law operated, the transfer was deemed by the court not to be a gift, title was held in the names of both spouses, and the marriage was continuing at the time that the non-consenting spouse moved to set aside the transfer. The *Andrade* opinion is highly critical of the *Mitchell* Court, contending that *Mitchell* misinterpreted the mandate of prior Supreme Court cases and violated the clear Legislative intent in its opinion. This Court agrees with the *Andrade* reasoning and therefore invalidates the lien entirely.

Because of the confusion created by the differing opinions of the Courts of Appeal, it is necessary to go back to the California Supreme Court cases that are controlling of the matter. All of these occurred prior to the 1975 Amendment, which granted each spouse the right to manage and con-

trol community property, and which made community property liable for the contracts of either spouse made after marriage. Prior to that Amendment, the husband had management and control of the community property, but was limited by Civil Code § 172(a) in that the wife or her duly authorized agent had to join him in executing any instrument which conveyed or encumbered community real property.

The six California Supreme Court cases that control each consider whether the transfer of the community real property was a gift to a third party or parties, and whether the action to set aside the transfer was filed during the existence of the community. The only logical reconciliation of these opinions is that if the non-consenting spouse brings an action to set aside the transfer during the existence of the community, the transfer will be invalidated in full; if she/he waits until the community has been terminated by law (either death or dissolution), the transfer will be invalidated only as to that spouse's one-half interest in the property.[3] No other legal effect may be given to this body of law.

*Dargie v. Patterson,* 176 Cal. 714, 169 P. 360 (1917) was the initial determination by the California Supreme Court of the effect of requiring that the wife consent in writing to the husband's transfer of community property. The law, as it existed at the time of the *Dargie* opinion, required the wife's consent only if the husband made a gift and confirmed that the husband had management and control of the community property and the same power to dispose of it—other than by testamentary means—as he had of his separate property.[4]

nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between the husband and wife; ..."

**3.** The six cases chosen by this Court as controlling are those of *Dargie v. Patterson,* 176 Cal. 714, 169 P. 360 (1917); *Lahaney v. Lahaney,* 208 Cal. 323, 281 P. 67 (1929); *Pretzer v. Pretzer,* 215 Cal. 659, 12 P.2d 429 (1932); *Trimble v. Trimble,* 219 Cal. 340, 26 P.2d 477 (1933); *Britton v. Hammell,* 4 Cal.2d 690, 52 P.2d 221 (1935); and *Heuer v. Heuer,* 33 Cal.2d 268, 201 P.2d 385

(1949). Because the law at the time only limited the husband if the transfer was a gift, that issue was then relevant. See fn. 4.

**4.** Civil Code § 172 as it applied in the *Dargie* case was as follows: "The husband has the management and control of the community property, with the like absolute power of disposition other than testamentary as he has of his separate estate. Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable considera-

In *Dargie* the husband had made a gift of community real property during the marriage without the knowledge or consent of the wife. After the husband died, the wife filed an action to set aside the transfer. The Court held that "the wife's right to assail the conveyance *where, as here, the action is brought after the husband's death,* is limited to an undivided half of the property." (Emphasis added) *Id.* at 718, 169 P. 360. The Court then went on to state that the husband, during his lifetime, is the owner of the community property, with all of the rights therein and that the limitation in § 172 does not impair his power to dispose of property. The Court further analyzed that because death had occurred, the husband's testamentary power existed and the widow need not be given greater rights than she would have enjoyed if the gift had never been made. Therefore they invalidated the transfer only as to the wife's portion of the community property.

Similarly, in *Lahaney*, 208 Cal. 323, 281 P. 67 (1929) the husband had died prior to the wife instituting the action to set aside his gift of community real property. The Court stated that the deed of the husband was valid "subject only to the right in the wife to institute, seasonably, in equity an action to revoke said deed and reinstate the property as 'community property with the title vested in the husband and subject to sale by him as before.' " *Id.* at 326, 281 P. 67. However, because the husband had died prior to the time that the wife brought the action, the community had already divided and the equities then shifted toward allowing the husband's gift to stand in that the wife no longer had a claim to his half of the community property. *Id.* at 327, 281 P. 67.

*Trimble*, 219 Cal. 340, 26 P.2d 477 (1933), *Pretzer*, 215 Cal. 659, 12 P.2d 429 (1932) and *Heuer* 33 Cal.2d 268, 201 P.2d 385 (1949) all involve situations in which the community had been dissolved, either by death or divorce, prior to the action. In all three cases the transfer was held invalid tion, unless the wife, in writing, consents thereonly as to the wife's remaining one-half interest in the property.

*Britton v. Hammel,* 4 Cal.2d 690, 52 P.2d 221 (1935) is the only Supreme Court decision that deals with an action filed while the community is still in existence. In invalidating the transfer as to the entire piece of real estate, the *Britton* Court distinguished the prior opinions of *Trimble* and *Lahaney* and stated: "[T]he husband has no right, prior to death, to give away any of the community property without the wife's consent; and the gift cannot be regarded as the equivalent of a will because *the time for effective exercise of the power of testamentary disposition has not yet arrived.*" (Emphasis added). 4 Cal.2d at 692, 52 P.2d 221. The Court went on to specify that the rights in the community property are not determined until the community is dissolved, using as an example the Court's power to award community property upon dissolution of the marriage based upon fault. *Id.* at 692–3, 52 P.2d 221.

The only determination left to be made by this Court is whether the 1975 Amendments to the community property law are such that the *Britton* opinion is no longer controlling in a case in which the non-consenting spouse brings an action while the community is still in existence. The Court finds that it is still controlling although there may be other theories which now come into play and should be analyzed.

The only ground upon which the *Britton* opinion appears subject to attack is the dicta that the husband's gift might defeat the power of the Court to compensate an innocent wife at the time of dissolution. 4 Cal.2d at 692, 52 P.2d 221. The Amendments to the Family Law Act have removed the concept of fault in divorce and now require an equal distribution of community property. However, this does not mandate that each piece of community property must be equally divided between the spouses. Civil Code § 4800(b). Therefore, although the Court can no longer award a greater part of the community to."

property to one spouse, which is the example given in the *Britton* case, it can determine that a particular piece of community property shall go to one spouse. There does not seem to be a significant difference between apportioning the community as to amount (as described in *Britton*) or as to specific assets. The holding in *Britton* therefore is as effective today as it was when written in 1935.

Since the 1975 Amendments, no less than seven opinions by the Courts of Appeal have dealt with this problem. There is no consistency, although it appears that (with the exception of the *Mitchell* case cited above) they roughly fall into the same characterization: if the community is still in existence at the time that the action is brought, then the deed of trust is invalidated in full;[5] if the community had dissolved at the time that the action was brought the deed of trust is set aside only as to the non-consenting spouse's interest.[6] However, not all cases can be so neatly categorized.[7]

Although it is not clearly stated in the cases, it appears to this Court that the Legislature intended the property to remain community property unless one of three events occur: death of a spouse, dissolution of the marriage, or contract to change the identity of the property which is entered into with the consent of both marital partners. Had the Legislature intended to allow one spouse to transmute community property into his/her separate property by unilaterally transferring an interest in that property to some third party, it would have so stated. The limitation on Civil Code § 5127 is clear: during the existence of the community, the non-consenting spouse can set aside a unilateral transfer of real property by the other spouse in its entirety and can restore the real property to its status as undivided community property.

The *Mitchell* opinion tries to resolve an apparent conflict between Civil Code § 5116, which makes the property of the community liable for the contracts of either spouse which are made after marriage, and the specifics of Civil Code § 5127. In interpreting an apparent conflict between two statutes, the Court must seek to give significance to every word, phrase, and sentence in the statute and to look for the Legislative intent. California Code of Civil Procedure §§ 1858, 1859; *In re Borba*, 736 F.2d 1317 (9th Cir.1984).

Because this Court is accustomed to categorizing the rights of creditors and claims, the Court finds that the apparent conflict between Civil Code § 5116 and § 5127 is more illusory than real. In a bankruptcy context, § 5116 allows an unsecured creditor of one spouse to become an unsecured creditor of the estate to the extent that community property exists to pay claims. It has nothing to do with creating a secured creditor relationship nor with granting rights in the community real property.

The statement in Civil Code § 5127 that both spouses "must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered" appears clear. Civil Code § 5125 deals with the transfer and encumbrance of community

---

5. See *Andrade*, 138 Cal.App.3d 330, 187 Cal. Rptr. 863; *Harper v. Raya*, 154 Cal.App.3d 908, 201 Cal.Rptr. 563 (1984).

6. See *Gantner v. Johnson*, 274 Cal.App.2d 869, 79 Cal.Rptr. 381 (1969)—in which the husband was incompetent at the time the wife brought the action. *Head v. Crawford*, 156 Cal.App.3d 11, 202 Cal.Rptr. 534 (1984) invalidates the transfer only as to the wife's one-half interest in an action that was filed after dissolution of the marriage.

7. Other cases don't fall into the mold. *Mitchell*, 110 Cal.App.3d 220, 167 Cal.Rptr. 760, has a

continuing community but only invalidates the transfer as to the wife's one-half interest. *Byrd v. Blanton*, 149 Cal.App.3d 987, 197 Cal.Rptr. 190 (1983) confirms that the wife has a community property interest in the real property, but does not deal with the meaning of the transfer by the deceased husband to his mother. *Wolfe v. Lipsy*, 163 Cal.App.3d 633, 209 Cal.Rptr. 801 (1985), does not specify the status of the marriage, but invalidates the lien in full as an encumbrance upon the homestead pursuant to Civil Code § 1242.

personal property and allows each spouse much wider latitude of action in dealing with the community personal property.

■ This Court believes that the California Legislature intended community real property to be treated differently from personal property and intended secured transactions in community real property to comply with certain basic requirements, which are not imposed on unsecured transactions. It therefore clearly stated that both spouses *must* execute the deed of trust.

The recent opinion in *Wolfe v. Lipsy,* 163 Cal.App.3d 633, 209 Cal.Rptr. 801 (1985) directs this Court to look at one other set of facts: whether there was a declaration of homestead recorded concerning the subject property prior to the granting of the deed of trust by the husband. In the present case the Court has been told by plaintiff that a declaration of homestead was recorded in 1975, but has not been presented with evidence of the filing.

The *Wolfe* case theorizes that the effect of Civil Code § 1242 prohibits a married person's homestead from being encumbered unless the instrument that encumbers it is executed and acknowledged by both the husband and wife.[8] Therefore a deed of trust executed only by the husband prior to July 1, 1983 is void if the subject property was previously homesteaded.

Although the deed of trust in this case was recorded on July 6, 1983, after the new Enforcement of Judgments Act went into effect, it was executed on June 17, 1983, which should be the controlling date. To hold otherwise would be to grant the creditor more rights than existed at the time that the transaction occurred. Therefore, on an alternative ground, the deed of trust is void in its entirety if a declaration of homestead was recorded prior to June 17, 1983.

Issues of estoppel, agency, or the lack of knowledge of this creditor are not relevant

in the case at hand. The creditor had previously dealt with Mr. and Mrs. Jones and knew that title to the residence was in both names, as husband and wife. In fact the creditor had previously required Mrs. Jones to sign the deed of trust. In this third deed of trust they failed to get her signature, either through negligence or intentional action.

The Court therefore finds that the deed of trust in question is null and void and creates no lien on the subject real property, but that Bert Potter Bail Bonds has an unsecured claim against the estate in the amount of $5,000.00, which is payable out of community property of the estate.

---

8. The holding in *Wolfe* emphasizes the historical confusion in the area of community property. While some Courts read Civil Code § 5127 to allow a spouse to encumber one-half of the community real property, they interpret similar

language of Civil Code § 1242 to remove the lien entirely. This Court finds no justification for the distinction of interpretation of these similar statutes.