[No. S014984. July 29, 1991.]

JOHN E. DROEGER, Plaintiff and Appellant, v.
FRIEDMAN, SLOAN & ROSS, Defendant and Respondent.

**COUNSEL**

Cory A. Birnberg and William A. Reppy, Jr., for Plaintiff and Appellant.

Friedman, Sloan & Ross, James A. Dorskind, Jeffrey S. Ross, Howard, Rice, Nemerovski, Canady, Robertson & Falk and Jerome B. Falk, Jr., for Defendant and Respondent.

Lorraine C. Gollub, Ronald Melin Supancic, Sandra Blair, James Scott Veltman, Ronald Rosenfeld, E. Stephen Temko, Denny Kershek, Frieda Gordon Daugherty and Diana Gould-Saltman as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**PANELLI, J.**—We granted review to determine whether a security interest in community real property given by one spouse to secure attorney fees during a pending marital dissolution proceeding is valid under Civil Code

section 5127.[1] Resolution of this question requires that we clarify the general rules governing transfers[2] by one spouse in violation of section 5127.[3]

We conclude that pursuant to section 5127, both spouses must consent to the transfer of community real property. Consequently, when a nonconsenting spouse, during the marriage, timely challenges a transfer made in violation of section 5127, the transfer is voidable. In the present case, after the parties had separated, Joanna Droeger unilaterally encumbered two parcels of community real property. Her husband, John E. Droeger, did not join in the execution of the encumbrance. Before the couple's marriage dissolution proceedings were completed, John Droeger challenged the validity of the encumbrance. As his consent was required under section 5127 to effect the encumbrance, we conclude that he is entitled to invalidate the encumbrance in its entirety.

## I. *Facts and Proceedings*

In 1982, Joanna Droeger (Wife) commenced a marital dissolution proceeding against appellant John Droeger (Husband). Wife retained Friedman, Sloan & Ross (Friedman) as her counsel in the proceeding. In October 1986, Friedman moved in the family law court for an order awarding attorney fees and costs of over $50,000 pendente lite pursuant to section 4370, subdivision (a) (authorizing court orders for payment of attorney fees pendente lite). However, the court only granted the motion in part, awarding Friedman $9,600, and reserving consideration of the request for additional attorney fees and costs until the time of trial.

On November 3, 1986, Wife executed a promissory note in the amount of $31,158.66 in favor of Friedman for attorney fees and costs. On the same day, Wife executed a deed of trust on two parcels of the community's real property securing the note. Husband did not join in the execution of the note or the deed of trust.

Husband commenced action in superior court to quiet title to the community realty that is encumbered by the deed of trust. Relying on *Mitchell* v.

---

[1] Hereafter, all statutory references are to the California Civil Code unless otherwise indicated.

[2] Section 5127 applies to leases for a longer period than one year, sales, conveyances, and encumbrances of community real property. For convenience, these actions will collectively be referred to as "transfers."

[3] The precise order we issued to the parties stated: "The issues to be argued before this court shall be limited to (1) whether Civil Code section 5127 permits one spouse to encumber his/her interest in community property without the consent of the other spouse, and (2) if so, whether a security interest in community property given by one spouse for attorney fees during a pending dissolution is valid."

*American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220 [167 Cal.Rptr. 760] (*Mitchell*), Friedman demurred to Husband's second amended complaint, claiming that the deed of trust was enforceable against Wife's one-half interest in the property. The court sustained the demurrer without leave to amend and entered a judgment of dismissal. Husband's motion for reconsideration was denied.

Concluding that the intent of section 5127 was to prevent division of community real property except by agreement of both spouses, or by the death of one spouse, or by dissolution of the marriage, the Court of Appeal reversed. The Court of Appeal held that Husband was entitled to void the encumbrance in its entirety. We affirm.

## II. *Section 5127*

Section 5127, which applies to the management and control of community real property, states in part, "either spouse has the management and control of the community real property . . . , but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered . . . ."

Since 1975, when reforms of the community property laws (discussed *post*) became effective, the appellate courts have reached inconsistent results in determining the effect of violations of section 5127 where one spouse has made a transfer without obtaining the other spouse's signature or authorization. Both lines of cases agree that a deed of trust, signed by only one spouse, cannot create a valid lien on the entire community real property; the nonconsenting spouse has authority to void the lien on his or her one-half interest in the property. The cases differ, however, on whether the nonconsenting spouse has the authority to void the lien entirely. (See *Mitchell*, *supra*, 110 Cal.App.3d 220; *Andrade Development Co.* v. *Martin* (1982) 138 Cal.App.3d 330 [187 Cal.Rptr. 863] (*Andrade*).)

The conflict in the· Court of Appeal cases cannot be understood or resolved without examining the history of section 5127. The language of section 5127 is substantially derived from that found in former section 172a, which dates back to 1917. The history of former section 172a and section 5127 reveals the evolution of the recognition of the wife's equal status in California community property law. As will be seen, however, the evolving recognition of the wife's equality has not always been reflected in the case law.

At the beginning of the California community property system in 1849, the husband was regarded as the full and complete owner of the community property and had the exclusive management and control of the community property. The wife's interest was an expectancy which was limited to the rights she would accrue only if she survived the termination of the marriage. (See Prager, *The Persistence of Separate Property Concepts in California's Community Property System* (1977) 24 UCLA L.Rev. 1, 35.) The first provision of our statutory law on the subject of the rights of the husband and wife in community property was section 9 of the Community Property Act of April 17, 1850 (Stats. 1850, ch. 103, § 9, p. 254). Under section 9 of the act "[t]he husband shall have the entire management and control of the common property, with the like absolute power of disposition as of his own separate estate."

Construing the Community Property Act of 1850, early cases held that, during the marriage, the estate of the husband in the community property was absolute, while that of the wife was a mere expectancy, as that of an heir. (See *Spreckels v. Spreckels* (1916) 172 Cal. 775 [158 P. 537] (*Spreckels*).) Section 9 of the Community Property Act of 1850 remained in force until the enactment of the Civil Code in 1872. The substance of section 9 of the act was covered by former section 172 of the Civil Code. In 1891, former section 172 was amended to read, "[t]he husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate; *provided, however*, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent [*sic*] thereto." (Original italics.)

Interpreting the 1891 proviso, the *Spreckels* court upheld the concept of the husband's almost absolute power over the community property. According to the court, the proviso did not "vest in the wife, during the marriage, any present interest or estate in the community property given away by the husband without her written consent. . . . If [the proviso] confers upon her, during the marriage, any right respecting such gifts, it is nothing more than a right to revoke the gift and, if necessary, sue to recover the property, not as her separate estate, but to reinstate it as a part of the community property, with the title vested in the husband and subject to sale by him, as before." (*Spreckels, supra*, 172 Cal. at p. 782.)

*Dargie v. Patterson* (1917) 176 Cal. 714 [169 P. 360] (*Dargie*) addressed the question left unanswered by *Spreckels*, i.e., whether the wife could avoid a deed in its entirety, or "only so far as is necessary to protect her rights." (*Id.* at p. 718.) In *Dargie* the husband had made a gift of community real property during the marriage without the knowledge or consent of the wife.

After the husband died, the wife filed an action to set aside the transfer. We held that "the only logical conclusion is that the wife's right to assail the conveyance where, as here, the action is brought after the husband's death, is limited to an undivided half of the property." (*Ibid.*) The rationale for the decision was that because the husband had died, his testamentary power existed and the widow need not be given greater rights than she would have enjoyed if the gift had never been made. Consequently, we invalidated the transfer only as to the wife's portion of the community property.

In 1917 former section 172a was added to the Civil Code. (Stats. 1917, ch. 583, § 2, p. 829.) Former section 172a continued to uphold the husband's sole management and control of the community real property, but, significantly, provided that "the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered . . . ."

The concept of a wife's interest in community property as being no more than a mere expectancy was abrogated in 1927. Legislation enacted in 1927 (Stats. 1927, ch. 265, § 1, p. 484) gave the wife a "present, existing, and equal interest" in the community property. (See *Byrd* v. *Blanton* (1983) 149 Cal.App.3d 987, 992 [197 Cal.Rptr. 190].) This enactment, however, was motivated by the desire to obtain federal income tax benefits for California taxpayers (i.e., to allow income splitting based on community co-ownership, before joint returns were allowed for all married couples) and did not increase the wife's power to manage the community property. (See Reppy, *Retroactivity of the 1975 Community Property Reforms* (1978) 48 So.Cal.L.Rev. 977, 1089.)

In *Lahaney* v. *Lahaney* (1929) 208 Cal. 323 [281 P. 67] we addressed a case under former section 172a where the husband had died prior to the wife instituting an action to set aside his inter vivos gift of community real property. We held that the deed executed by the husband was valid, subject only to the wife's right to institute, seasonably, an action in equity to revoke the deed and reinstate the property as community property with the title vested in the husband. (208 Cal. at p. 326.) As the wife brought the action after the husband's death, we concluded that the community was already divided and she could only recover her one-half interest in the property.

In *Pretzer* v. *Pretzer* (1932) 215 Cal. 659 [12 P.2d 429], *Trimble* v. *Trimble* (1933) 219 Cal. 340 [26 P.2d 477], and *Heuer* v. *Heuer* (1949) 33 Cal.2d 268 [201 P.2d 385], we considered similar questions of the effect of a husband's disposition of community real property without the wife's consent. In all three cases the community had been dissolved, either by death or

divorce, prior to the wife's action, and in all three we held that the transfer was invalid only as to the wife's remaining one-half interest in the property.[4]

In *Britton* v. *Hammel* (1935) 4 Cal.2d 690 [52 P.2d 221] (*Britton*), we discussed for the first time an action brought by a nonconsenting spouse while the marriage, and hence the community, was still in existence. John Britton procured a decree of divorce from his first wife, Sophie Britton, in 1891. He acquired property in 1916, and in 1923 and 1924 he conveyed title to the property to Rose Britton, supposedly his second wife. She later conveyed it back to him as his separate property. Rose died in 1926 and John deeded the property away. Sophie brought action to declare the deeds void and to compel the return of the property to the community. In a separate action, John's divorce decree from Sophie was annulled because it had been procured by fraud. Because the first marriage was determined to be still in existence when the deeds were made, we concluded that Sophie was entitled to set aside the gift of community real property in its entirety.

We gave four reasons for our decision in *Britton* allowing a complete set aside of the gift: If the wife "were only permitted to recover a one-half interest, and that one-half interest recovered were to remain community property, it would still be subject to the husband's control, with the result that the protection given the wife by the statute would be substantially nullified. If, on the other hand, the one-half interest recovered were regarded as her separate property, there would be a resulting division or partition of the community property during the marriage by the husband's arbitrary act, without consent of the wife. Our law does not contemplate this means of dividing the community property. It provides only for division after dissolution of the community by death or divorce, [or during marriage with the consent of both spouses]." (*Britton, supra,* 4 Cal.2d at p. 692.) As mentioned, we also noted that the cases allowing the wife to recover only one-half are based on the right of the husband to testamentary disposition of one-half of the property. Hence, gifts before death are will substitutes. We noted that this reasoning does not apply in an ongoing marriage. Finally, under the laws in effect at the time the case was decided, if the wife could not recover the whole property during the marriage, the husband could impair the wife's right to receive a larger share of the community property at dissolution where the grounds for divorce were adultery or extreme cruelty of the husband. (*Id.* at pp. 692-693.)

---

[4]*Heuer* v. *Heuer, supra,* 33 Cal.2d 268, involved somewhat unique facts in that the wife, suing after she was validly divorced, agreed during appeal that she would be satisfied if her one-half community interest in the property was restored to her. We noted that "[t]his would be proper since the conveyances by the husband may be deemed valid as to his community interest [citations] in the property . . . ." (*Id.* at p. 271.)

In *Britton*, we distinguished *Trimble* v. *Trimble, supra,* 219 Cal. 340, and *Lahaney* v. *Lahaney, supra,* 208 Cal. 323, as cases that were concerned with an action by the wife after her husband's death and premised on the theory that at his death, the husband had a right to dispose of his one-half interest in the property.[5]

In 1969, former section 172a became part of the Family Law Act as section 5127 (Stats. 1969, ch. 1608, § 8, p. 3342, operative Jan. 1, 1970). In 1975, reforms of the community property laws became effective, including legislation giving either spouse the management and control of the community property (§ 5125) and making section 5127 gender neutral. (Stats. 1974, ch. 1206, § 5, p. 2610.) The 1975 reforms, therefore, changed the context in which section 5127 must be interpreted. As can be seen from the cases discussed, the concept of equal management was a radical and significant change in community property law and was a landmark step toward recognizing equality of the spouses. Accordingly, the 1975 reform legislation marked a significant dividing line between the husband-dominated community property law of the past and the equal managerial rights of the present day.

Before the 1975 reforms, the law was clear as to the extent of relief allowed to a spouse who disapproved of a transfer made in violation of section 5127. If the action was brought after the transferor-spouse's death or after dissolution of the marriage, the set-aside was limited to the nonconsenting spouse's one-half community property interest. (See *Trimble* v. *Trimble, supra,* 219 Cal. 340; *Pretzer* v. *Pretzer, supra,* 215 Cal. 659.) If the action was brought during the ongoing marriage, however, the nonconsenting spouse was permitted to set aside the transfer in its entirety. (See *Britton, supra,* 4 Cal.2d 690; *Vaughan* v. *Roberts, supra,* 45 Cal.App.2d 246.)

After the 1975 reforms, however, a split of authority developed in the appellate courts concerning the extent of relief available when the nonconsenting spouse brought an action during the marriage. One line of decisions holds that transfers are voidable only as to the nonconsenting spouse's

---

[5]The *Britton* rule was approved in *Vaughan* v. *Roberts* (1941) 45 Cal.App.2d 246 [113 P.2d 884]. In *Vaughan*, the husband signed a promissory note and also executed a deed of trust on community real property to secure the note. The Court of Appeal stated: "The [trial] court also found that the note and trust deed were neither signed nor authorized to be signed by Mrs. Vaughan, and that the instruments which affect the title to real property were therefore void. We are of the opinion that is a correct conclusion of law . . . . [¶] It has been held that a conveyance of community real property by the husband, without the authorization of his wife, contrary to the provisions of section 172a of the Civil Code, is at least voidable in a suit by the wife during the marriage. (*Britton* v. *Hammell,* 4 Cal. (2d) 690 . . . .)" (*Vaughan* v. *Roberts, supra,* 45 Cal.App.2d at p. 259.)

one-half interest, regardless of when the action is brought. (See *Wolfe* v. *Lipsy* (1985) 163 Cal.App.3d 633 [209 Cal.Rptr. 801]; *Head* v. *Crawford* (1984) 156 Cal.App.3d 11 [202 Cal.Rptr. 534]; *Mitchell, supra,* 110 Cal.App.3d 220.) Equally recent decisions, including the Court of Appeal decision in this case, expressly disapprove of the *Mitchell* line of authority, and hold that if relief is sought during marriage, the entire transfer should be set aside. (See *Harper* v. *Raya* (1984) 154 Cal.App.3d 908 [201 Cal.Rptr. 563]; *Andrade, supra,* 138 Cal.App.3d 330; *In re Jones* (C.D.Cal. 1985) 51 Bankr. 834. See also, Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1990) ¶¶ 8:163-8:163.3, rev. #1, 1991.)

As indicated, the leading and most frequently cited cases on each side of the issue are *Mitchell, supra,* 110 Cal.App.3d 220, and *Andrade, supra,* 138 Cal.App.3d 330. *Mitchell* holds that a transfer by one spouse is valid as to the transferring spouse's one-half interest in the property, but may be invalidated by the nonconsenting spouse as to his or her one-half interest in the property. *Andrade,* on the other hand, allows the nonconsenting spouse to invalidate the transfer entirely. ██ ██ Both cases are similar in that the applicable law was the same, the transfer was deemed by the court not to be a gift, title to the property was held in the names of both spouses, and the marriage was continuing at the time that the nonconsenting spouse moved to set aside the transfer. (*In re Jones, supra,* 51 Bankr. 834, 837.)[6]

 Since the confusion in this area of the law appears to have developed after enactment of the 1975 amendments to the community property laws, we must determine whether the amendments are such that the reasoning of the *Britton* (*supra,* 4 Cal.2d 690) court is no longer controlling when the nonconsenting spouse brings an action while the community is still in existence. We shall conclude that our reasoning supporting *Britton* is still valid, and hence the *Andrade* (*supra,* 138 Cal.App.3d 330) line of cases is correct.

In our view, *Mitchell* did not completely analyze section 5127 and the relevant case law. The *Mitchell* court reasoned that because the community is liable for the contracts of either spouse which are made after marriage (§ 5116), the community realty is subject to execution for the debts con-

---

[6]In *Jones,* the husband, during the ongoing marriage, executed a deed of trust on community real property without his wife's consent to secure a bail bond. The court held that under section 5127, during the existence of the community, the nonconsenting spouse can set aside a unilateral transfer of real property by the other spouse in its entirety and can restore the real property to its status as undivided community property. (51 Bankr. at p. 839.) While we note that "federal decisions are in no event controlling in matters of state law" (see *Estate of D'India* (1976) 63 Cal.App.3d 942, 948 [134 Cal.Rptr. 165]; accord, *Ware* v. *Heller* (1944) 63 Cal.App.2d 817, 821 [148 P.2d 410]), the *Jones* opinion is instructive and helpful as it is interpreting similar issues as those in this case and discusses the same California cases.)

tracted during the marriage. Hence, the *Mitchell* court concluded, it follows that the deed of trust must also be valid. (*Mitchell, supra,* 110 Cal.App.3d at p. 223.)

This analysis ignores section 5127's plain language requiring the signature of both spouses for a valid transfer of community realty. Furthermore, *Mitchell* makes no mention of *Britton* but instead relies on *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869 [79 Cal.Rptr. 381] (*Gantner*). Yet, *Gantner* specifically notes that its discussion concerned the "rules applying to transfers of community property by the husband *as manager of the community property.*" (*Id.* at p. 876, italics added.)[7]

In its disapproval of *Mitchell* and related cases, the *Andrade* court pointed out that since *Gantner, supra,* 274 Cal.App.2d 869, section 5127 has been amended to provide both spouses with equal management and control of community real property. "It is highly questionable whether the rules espoused in *Gantner* survive after the amendments to section 5127 which have significantly altered former concepts of the spouses' respective rights and responsibilities concerning their community property." (*Andrade, supra,* 138 Cal.App.3d at p. 337.) Like the *Andrade* court, we conclude that the correct rule is the one that protects each spouse from the unauthorized acts of the other that may defeat the community interests in the real property. (*Andrade, supra,* 138 Cal.App.3d at p. 337.)

Of the four reasons (see, *ante,* p. 34) for our opinion in *Britton,* only one is called into question by the 1975 amendments. In *Britton* we said that allowing the husband's gift of community real property to stand might defeat the power of the court to award more than half of the community property to an "innocent" wife at the time of dissolution. (*Britton, supra,* 4 Cal.2d at p. 692) ■ The 1975 Family Law Act amendments also removed the concept of fault in divorce, and courts are now generally required to make an equal division of the community property. (§ 4800, subd. (a).) However, in making an equal division, each individual piece of community property does not have to be equally divided. (§ 4800, subd. (b).) Although the court may not award a greater part of the community property to one spouse, it can determine to which spouse a particular piece of community property shall be awarded. Since the court retains power to award a specific asset to a spouse,

---

[7]*Gantner* relies on two cases, *Heuer* v. *Heuer, supra,* 33 Cal.2d 268, and *Woods* v. *Bradford* (1967) 254 Cal.App.2d 501 [62 Cal.Rptr. 391], which are dissimilar to the facts in *Mitchell.* In *Heuer,* the transfer was made by the husband before divorce, and the former spouse, suing after the divorce, agreed during an appeal that she would be satisfied "if her one-half community interest in the property involved [was] restored to her." (*Heuer, supra,* 33 Cal.2d at pp. 270-271.) *Woods* involved a transfer of only an undivided one-half interest made after divorce pursuant to court order. The court found that section 5127 (then former section 172a) had no application to the case. (*Woods, supra,* 254 Cal.App.2d at p. 505.)

the change in the law is not so significant as to undermine our holding in *Britton*. The other reasons underlying our decision in *Britton* are still valid and support the right of the nonconsenting spouse during the marriage to invalidate the transfer in its entirety.

More importantly, the *Britton* (*supra*, 4 Cal.2d 690) and *Andrade* (*supra*, 138 Cal.App.3d 330) line of cases is consistent with the plain language of section 5127. ■ "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) ■ The statute requires that both spouses join in executing "*any* instrument" conveying "*any* interest" in the community's real property. (Italics added.) The term "any" (particularly in a statute) means "all" or "every." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056] ["From the earliest days of statehood we have interpreted 'any' to be broad, general and all embracing."]; *Estate of Wyman* (1962) 208 Cal.App.2d 489, 492 [25 Cal.Rptr. 280]; *Emmolo* v. *Southern Pacific Co.* (1949) 91 Cal.App.2d 87, 92 [204 P.2d 427].) The language, "any interest," would include the consenting spouse's one-half undivided interest. Therefore, under the plain language of section 5127, both spouses "must join in executing any instrument" encumbering such interest.[8]

Friedman argues that encumbrances under section 5127 should be treated differently than leases, sales, and conveyances. We disagree. ■ As the United States Supreme Court has stated, "[it] is a familiar principle of statutory construction that words grouped in a list should be given related meaning." (*Third National Bank* v. *Impac Limited, Inc.* (1974) 432 U.S. 312, 322 [53 L.Ed.2d 368, 376, 97 S.Ct. 2307]; see also, *Schreiber* v. *Burlington Northern, Inc.* (1985) 472 U.S. 1, 8 [86 L.Ed.2d 1, 7, 105 S.Ct. 2458]; *Securities Industry Ass'n* v. *Board of Governors* (1984) 468 U.S. 207, 218 [82 L.Ed.2d 158, 167-168, 104 S.Ct. 3003].) In each of these cases the high court rejected an argument that one word in a list should be construed to have a substantially different effect than others. ■ Furthermore, the *Mitchell* analysis, which Friedman urges us to adopt, does not support the argument that encumbrances should be treated differently. *Mitchell* noted that *Gantner*, *supra*, 274 Cal.App.2d 869, 876-877, involved a conveyance, and then applied *Gantner*'s analysis, by analogy, to cases involving encum-

---

[8] A spouse wishing to transfer community real property during the marriage who is unable to obtain the consent of the other spouse is not completely without recourse. Section 5125.1, subdivision (e) permits the courts to "dispense with the requirement of the other spouse's [arbitrarily refused] consent . . . if the proposed transaction is in the best interests of the community."

brances. The *Mitchell* court did not indicate that encumbrances should in any way be treated differently. (*Mitchell, supra,* 110 Cal.App.3d at p. 223.)

Amicus curiae Mortgage Institute of California argues that after the 1975 reforms, the power of either spouse to transfer community property is greater than before the reforms. In effect, it argues that equal management concepts lead to the conclusion that both spouses should now be able to transfer community property during the marriage, and that the transfer should be valid as to the consenting spouse's one-half interest. However, the earlier cases upholding a husband's ability to transfer his one-half community property interest during the marriage were based on the husband's power as *sole* manager of the community property. (See, e.g., *Gantner, supra,* 274 Cal.App.2d at p. 876.) The 1975 reforms, and the advent of concepts of equal management and *shared* responsibility for the community property, support our interpretation of section 5127 as requiring both spouses' consent for the effective transfer of community real property.

Amicus curiae Mortgage Institute of California also contends that the Legislature has expressed its approval of *Mitchell* by failing to enact legislation proposed by the California Law Revision Commission that would have expressly overruled that case. We disagree. In our view, the Law Revision Commission did not believe that its recommended legislation would change California law. The commission stated that enactment of its recommendations would "[codify] general California law and overrule[ ] the contrary case of Mitchell . . . ." (Recommendations Relating to Disposition of Community Property (Sept. 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 279, fn. 33.)[9] It is apparent that the commission viewed the recommended statutes as codifying the general law as it existed, and saw *Mitchell* as an aberrant case, inconsistent with general California law. Given the deficiencies in the *Mitchell* analysis, the soundness of the *Britton* and *Andrade* line of cases, and our own interpretation of section 5127, the fact that *Mitchell* has not specifically been legislatively abrogated is not sufficient evidence that the Legislature approves of the decision.[10]

---

[9]The commission further noted that its proposed new section would codify "general California law that a disposition avoided during marriage must be set aside as to the interest of both spouses, not just the interest of the non-joining or non-consenting spouse. See, *e.g.,* Britton v. Hammell, 4 Cal.2d 690 . . . (1935) . . . ; Andrade Development Co. v. Martin, 138 Cal.App.3d 330 . . . . This overrules Mitchell . . . ." (*Id.* at p. 291.)

[10]The Mortgage Institute of California also argues that the enactment of section 5125.1, operative July 1, 1987, is further evidence of the Legislature's approval of *Mitchell* and establishes the remedies for a transfer in violation of section 5127. Section 5125.1 states in part that "[a] spouse has a claim against the other spouse for a breach of the duty imposed by Section 5125 or 5127 that results in substantial impairment to the claimant spouse's present undivided one-half interest in the community estate."

Our review of the legislative history of section 5125.1 does not support amicus curiae's contention that enactment of section 5125.1 signals legislative approval of *Mitchell* or the

### III. *Transfers to Secure Attorney Fees*

In the present case, after the parties had separated, but before a dissolution of the marriage, Wife unilaterally encumbered two parcels of the community's realty to secure attorney fees. Husband brought an action to quiet title to the community realty. As the character of the property as community property had not changed at the time Wife made the unilateral encumbrance and at the time Husband challenged the encumbrance, we conclude that Husband is entitled to invalidate the encumbrance in its entirety.

Seeking a contrary result, Friedman and various amicus curiae groups have advanced some policy reasons for allowing a spouse to unilaterally transfer community real property to secure attorney fees in a dissolution proceeding. Their concerns are primarily for economically weak spouses. Before the granting of pendente lite orders for litigation expenses, an economically weak spouse seeking legal representation may be in a disadvantageous position. (See, e.g., *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 995 [106 Cal.Rptr. 78].) Lacking economic parity and access to liquid funds, the economically weak spouse's only assets available for the payment of attorney fees may consist of his or her interest in the community real property. If an economically weak spouse is unable to take advantage of his or her interest in the community real property, then that spouse may either have to retain inexperienced or incompetent counsel, find counsel or a lender willing to extend unlimited, unsecured credit, or appear in propria persona. Moreover, important prehearing discovery may not be possible and the retention of experts would be most difficult.

We are not unmindful of the concerns of economically weak spouses which are expressed by amici curiae. Although sections 4370, 4370.5 and 5125.1, subdivision (e) serve to protect the economically weak spouse to some extent, they are not totally adequate to assure legal representation. Sections 4370 and 4370.5 permit the court, during the pendency of a dissolution proceeding, to order a party to pay attorney fees pendente lite. "The basis for awarding attorney's fees is that each party must have access to legal representation in order to preserve all of his or her rights." (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 428 [149 Cal.Rptr. 616].) Sections 4370 and 4370.5, though helpful in many instances, admittedly do not always guarantee an award, or an adequate award, of fees to a spouse without funds.[11] Moreover, these sections may also have the unintended

---

view that section 5125.1 amended section 5127 to provide the exclusive remedy to a spouse who objects to the unilateral transfer of community property.

[11]In the instant case, for example, the section 4370 award to Wife only represented approximately 25 percent of Wife's obligation to her attorneys. (See, *ante*, p. 30.)

effect of placing an economically weak spouse at the mercy of the courts.[12] (169 Cal.App.3d at pp. 1215-1216.) Section 5125.1, subdivision (e), which empowers the court to dispense with the requirements of section 5127 in certain circumstances[13] may, as a practical matter, not always prove effective. For example, a spouse who is without funds to initially hire an attorney in a dissolution proceeding may find himself or herself in the incongruous position of also having to hire an attorney to commence an action under section 5125.1, subdivision (e). In most cases, then, section 5125.1, subdivision (e) may prove to be an illusory remedy for the economically weak spouse.

Although we are sympathetic to the problems economically weak spouses may have in obtaining legal representation and recognize the limitations of sections 4370, 4370.5, and 5125.1, subdivision (e), we are nonetheless compelled to conclude that nothing in the language of section 5127, or in its legislative history, allows us to carve out an exception to the general rule against unilateral transfers of community realty. If section 5127 is to be amended to create an exception allowing a spouse to unilaterally transfer community realty to secure attorney fees in a dissolution proceeding, it is the task of the Legislature and not the courts to create that exception. "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858. See also, *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 147 [271 Cal.Rptr. 146, 793 P.2d 479] ["Complex policy choices affecting all society are involved, and '[l]egislatures, in making such policy decisions, have the ability to gather empirical evidence, solicit the advice of experts, and hold hearings at which all interested parties present evidence and express their views . . . .' (*Foley* v. *Interactive Data Corp.* [(1988)] 47 Cal.3d 654, 694, fn. 31 [254 Cal.Rptr. 211, 765 P.2d 373].).")

While we recognize that the separation period is sometimes treated differently from the ongoing marriage, this different treatment is based on specific provisions of our code sections and is not the result of judicial fiat. (See, e.g., section 5118, providing that the earnings and accumulations of either

[12]But see, *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213 [215 Cal.Rptr. 789], holding that it is an abuse of discretion for trial courts to deny motions for pendente lite attorney fees and costs in a marital dissolution proceeding without considering the needs of the requesting spouse and the ability to pay of the spouse against whom the award is sought. "California's public policy in favor of expeditious and final resolution of marital dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation."

[13]See, *ante*, page 38, footnote 8.

spouse during separation are the separate property of that spouse; section 5120.140, subdivision (a)(2), providing that debts incurred after separation, other than debts for the necessaries of life, are the separate obligation of the spouse who incurred the debt; and section 4359, subdivision (a), providing that during the pendency of a dissolution proceeding, the court may issue ex parte protective orders restraining any person from transferring, encumbering, hypothecating, concealing or disposing of any property, real or personal, whether community, quasi-community, or separate.) Hence, the Legislature, if it chooses, may decide to fashion a solution to the problems faced by economically weak spouses in dissolution proceedings in some fashion. Given the plain language of section 5127, and the fact that community property does not change its character as such upon separation of the spouses, we are not the body authorized to create an exception to the statute.

 We also note that the Legislature is not unaware of some of the problems we discuss above. The Legislature recently amended the Code of Civil Procedure provisions relating to the restraint on alienation of property, which is contained in every dissolution summons after July 1, 1990. Code of Civil Procedure section 412.21, subdivision (a)(2) (hereafter Code of Civil Procedure section 412.21 (a)(2)) sets forth the provisions of the "automatic" restraining order and now concludes that "nothing in the restraining order shall preclude the parties from using community property to pay reasonable attorney's fees in order to retain legal counsel in the action."

Amicus curiae asserts that by enacting Code of Civil Procedure section 412.21 (a)(2), the Legislature was "carving out" an exception to section 5127 to allow transfers of community real property for the payment of attorney fees. The dissent maintains that when "harmonized," section 5127 and Code of Civil Procedure section 412.21 (a)(2) allow a spouse to unilaterally transfer community real property to secure attorney fees in a dissolution action. Although we share the concern for economically weak spouses, we do not believe that either the plain language of Code of Civil Procedure section 412.21 (a)(2) or its legislative history supports the conclusion that the Legislature intended to create an exception to, or implicitly alter the effect of, section 5127.

As a preliminary matter, we observe that the provisions of Code of Civil Procedure section 412.21 (a)(2) do not even apply to the present case. Wife unilaterally encumbered the community real property more than three years before Code of Civil Procedure section 412.21 (a)(2)'s effective date of July 1, 1990. As we have often observed, "[n]o part of [the Code of Civil Procedure] is retroactive, unless expressly so declared." (Code Civ. Proc., § 3. See also, *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d

388, 393 [182 P.2d 159] ["It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. [Citations.]"].) Code of Civil Procedure section 412.21 (a)(2) contains no such explicit language making its provisions retroactive.

More importantly, neither the plain language nor the legislative history of Code of Civil Procedure section 412.21 (a)(2) support the conclusion that the Legislature intended to create an explicit exception to section 5127 or allow an interpretation of section 5127 that would create an implicit exception to the general rule forbidding unilateral transfers of community real property. The general principle that statutes must be construed in the context of the entire statutory system of which they are a part, in order to achieve harmony among the parts, applies equally to this case. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009 [239 Cal.Rptr. 656, 741 P.2d 154].) The portion of Code of Civil Procedure section 412.21 (a)(2) pertaining to attorney fees merely frees a party from the prohibitions of the automatic restraining order so that community property may be used to *pay* reasonable attorney fees. The statute does not attempt to address the substantive issue of the legality of unilateral *sales, leases, conveyances, or encumbrances* of community real property. Hence, Code of Civil Procedure section 412.21 (a)(2) may be interpreted as applying to community property that is readily accessible or "liquid," such as funds in a bank account, and not to transfers of community real property. This interpretation harmonizes the two sections by giving effect to Code of Civil Procedure section 412.21 (a)(2) without abrogating section 5127.

Furthermore, nothing in the legislative history of Code of Civil Procedure section 412.21 (a)(2) reveals a legislative intent to create an explicit or implicit exception to, or amendment of, section 5127. Significantly, section 5127 is not even mentioned or referred to in the legislative history of Code of Civil Procedure section 412.21 (a)(2). ■ " ' "Repeals by implication are disfavored and are recognized only when potentially conflicting statutes cannot be harmonized." (*Dew* v. *Appleberry* (1979) 23 Cal.3d 630, 636 [153 Cal.Rptr. 219, 591 P.2d 509].) Indeed, "[s]o strong is the presumption against implied repeals that when a new enactment conflicts with an existing provision, '[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first.' " (*Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 868 [167 Cal.Rptr. 820, 616 P.2d 802], quoting *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]. See also *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 249 [279 Cal.Rptr. 325, 806 P.2d 1360].)

In addition, the fact that section 5127 is neither analyzed nor mentioned in Code of Civil Procedure section 412.21 (a)(2)'s legislative history makes it impossible to conclude that Code of Civil Procedure section 412.21 (a)(2) "illuminates the Legislature's understanding of the statutory scheme it created as not precluding resort to community real property to secure attorney fees in a dissolution action." (Dis. opn., *post*, at p. 55.) ▆▆▆ ▆▆▆ Because we do not believe that the Legislature would create an exception to the general rule against unilateral transfers of community real property, or express its understanding of that prohibition, without mentioning section 5127, we are unwilling to create a judicial exception to the same rule.[14]

▆▆▆ Finally, Code of Civil Procedure section 412.21 codifies the *procedural rules* governing the inclusion of temporary restraining orders in summonses for, among other things, the dissolution of a marriage. By contrast, section 5127 codifies the *substantive law* relating to community property. Having considered the language and legislative history of both section 5127 and Code of Civil Procedure section 412.21 (a)(2), we cannot believe the Legislature chose to create an exception to the substantive law, contained in the Civil Code, by amending a procedural rule of the Code of Civil Procedure. As Code of Civil Procedure section 412.21 (a)(2) cannot be applied retroactively, we have no occasion in the present case to definitively interpret the section. Nonetheless, we cannot accept the contention that this procedural rule creates an explicit or implicit exception to section 5127 that would permit unilateral transfers of community real property in violation of the general rule against such unilateral transfers.[15]

---

[14]The dissent agrees with our conclusion that enactment of Code of Civil Procedure section 412.21 (a)(2) does not alter the meaning of section 5127. (Dis. opn., *post*, at p. 55.) Rather, the dissent contends, enactment of Code of Civil Procedure section 412.21 (a)(2) "illuminates" the Legislature's understanding of the statutory framework governing transfers of community real property. However, even if we were to accept the dissent's contention for the sake of argument, a subsequent expression of the Legislature as to the intent of a prior statute is not binding. (*California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702]. See also, *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157-1158, fn. 6 [278 Cal.Rptr. 614, 805 P.2d 873]; *California Teachers Assn.* v. *Cory* (1984) 155 Cal.App.3d 494, 506-507 [202 Cal.Rptr. 611].) More importantly, nothing in the language or history of section 5127 itself supports the conclusion that the Legislature understood the section to encompass an exception to the general rule against unilateral transfers of community real property for the payment of attorney fees in dissolution actions.

[15]Interpreting Code of Civil Procedure section 412.21 (a)(2) as creating an exception to section 5127 might, in some cases, harm, rather than help, economically weak spouses. As Code of Civil Procedure section 412.21 (a)(2) does not expressly limit its application to economically weak spouses, an economically strong spouse could also use the section to unilaterally transfer one's interest in community real property, such as an interest in the couple's home, to secure attorney fees. Such a transfer could harm the nonconsenting spouse, especially if the home is the sole community asset and the nonconsenting spouse has custody of minor children. For example, if the consenting spouse defaults, the nonconsenting spouse

## IV. RETROACTIVITY

■ Having determined that a spouse may not unilaterally transfer community real property without the other spouse's consent, we must decide whether our ruling is to be applied retroactively. Friedman argues that any decision disapproving of *Mitchell* (*supra*, 110 Cal.App.3d 220) and single-spouse transfers of community realty should be given only prospective application. Friedman contends that for at least a decade parties have reasonably and justifiably relied on *Mitchell* for the proposition that a deed of trust executed by one spouse secured by community realty is enforceable as to that spouse.

■ "The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].) "This general principle is subject to two virtually universal exceptions, based on considerations of fairness and public policy. A decision announcing a change in a judicial rule of law is rarely, if ever, a basis for disturbing a final judgment based on the prior rule. [Citations.] Nor will the new decision be applied to impair contracts made or property rights acquired in accordance with the prior rule. [Citations.]" (*Estate of Propst* (1990) 50 Cal.3d 448, 462-463 [268 Cal.Rptr. 114, 788 P.2d 628].) A decision announces a new rule of law, for example, when it disapproves of a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 37 [196 Cal.Rptr. 704, 672 P.2d 110].)

■ Despite Friedman's contentions to the contrary, the facts of this case do not support departure from the general rule of retroactivity. Our decision does not announce a "new" rule of law or a change in the law. Rather, our decision resolves a conflict which existed in the appellate courts. We also reject Friedman's contention that our opinion should not be applied retroactively because it "was not foreseeable." Whether or not one characterizes our decision as a "new" rule of law, a characterization we reject, "it is undisputed that it did not overrule a prior decision of this court." (*Newman* v. *Emerson Radio Corp., supra*, 48 Cal.3d 973, 986.)

Furthermore, *Mitchell* is neither a long-standing precedent nor has it enjoyed near unanimous support in the lower courts. *Mitchell* was decided

could be forced to become a tenant in common with a total stranger—the mortgage holder. The mortgage holder, after becoming a tenant in common with the nonconsenting spouse, might be able to force a partition or sale of the home. Furthermore, the transfer of *any* interest in the real property might make it difficult or impossible for the court to make an equal and equitable division of the community property. (§ 4800.) Hence, it cannot be assumed that interpreting Code of Civil Procedure section 412.21 (a)(2) as creating an exception to section 5127 would always benefit an economically weak spouse.

fairly recently, 1980, and was questioned by *Andrade* only two years later. (*Andrade, supra*, 138 Cal.App.3d at p. 337, fn. 3. Accord, *Harper* v. *Raya, supra*, 154 Cal.App.3d at p. 913; *In re Jones, supra*, 51 Bankr. 835.) Moreover, as we discussed above, *Mitchell's* analysis of section 5127 was incomplete. Under these circumstances, we cannot conclude that reliance on *Mitchell*, without due regard to the contrary rule of *Andrade*, was reasonable and justifiable.[16] Consequently, we decline to depart from the general rule that favors giving judicial decisions retroactive effect.

## V. CONCLUSION

In summary, we conclude that during the existence of the community, the nonconsenting spouse should be fully protected against efforts by the other spouse to transfer community real property in contravention of section 5127. In such cases, the attempted transfer is subject to a timely action during the marriage to avoid it. A transfer of the community real property without both spouses consent adversely affects the nonconsenting spouse's interests and the dissolution court's ability to make an equitable division of the community property. Allowing the transfer to stand against a challenge by the nonconsenting spouse could have the effect of partitioning the community property during the marriage, an event the Legislature has expressly sought to avoid. (See Code Civ. Proc., § 872.210, subd. (b).) The effect of enforcing one-spouse transfers would be to make community property more like property held as tenants in common and could result in the nonconsenting spouse being forced to become a tenant in common with a stranger.

We believe the *Britton* (*supra*, 4 Cal.2d 690) and *Andrade* (*supra*, 138 Cal.App.3d 330) line of cases to be consistent with the nature of community property in California today. Both spouses hold equal undivided one-half interests in the property. Joint ownership of the property requires that during

---

[16]Our recent decision in *Woods* v. *Young* (1991) 53 Cal.3d 315 [279 Cal.Rptr. 613, 807 P.2d 455] supports retroactive application of our opinion in this case. In *Woods* we gave prospective application to our opinion interpreting a provision of the Medical Injury Compensation Reform Act (MICRA). We noted that although the appellate courts were divided on part of the interpretation of the relevant MICRA provision, they were also all in agreement respecting another part of the interpretation of the provision. "This unanimous conclusion established a settled rule upon which plaintiff could reasonably rely . . . ." (*Woods* v. *Young, supra*, 53 Cal.3d at p. 330.)

We noted, however, that when the appellate courts are divided on an issue, reasonable reliance on one particular interpretation cannot be presumed. Hence, we stated that "[b]ecause the Courts of Appeal were divided on this issue, a plaintiff could not reasonably rely on the interpretation under which the time for bringing suit after discovery of the injury could exceed 1 year and 90 days. This interpretation, first advanced in *Gomez* v. *Valley View Sanitorium* [(1987)] 87 Cal.App.3d 507 [151 Cal.Rptr. 97], was vigorously disputed by other appellate decisions." (*Woods* v. *Young, supra*, 53 Cal.3d at p. 330, fn. 6.) Here the appellate courts were clearly divided in their interpretation of section 5127.

an ongoing marriage *both* spouses must consent before such property is leased for a period longer than one year, sold, conveyed, or encumbered. (§ 5127.) Community property principles of equal management and shared responsibility mandate that the nonconsenting spouse is entitled to invalidate in its entirety the other spouse's transfer of community real property.

The judgment of the Court of Appeal that section 5127 prevents one spouse from encumbering the community's real property without the other spouse's consent is affirmed.[17]

Lucas, C. J., Mosk, J., Broussard, J., Arabian, J., and Baxter, J., concurred.

**KENNARD, J.**—I respectfully dissent.

The issue in this case is whether, after the parties to a marriage have separated, a spouse has the right to encumber his or her one-half interest in community real property without the consent of the other spouse to secure the payment of attorney fees incurred in a marital dissolution proceeding. Construed under well-established rules, the controlling statutes disclose a legislative intent to grant spouses that right. Today's decision not only contravenes that intent, but will make it virtually impossible for many economically weaker spouses to obtain adequate legal representation in contested divorce proceedings.

I

In 1982, Joanna Droeger (Wife) commenced a marital dissolution action against her husband, John Droeger (Husband), a partner in a San Francisco law firm. She retained the law firm of Friedman, Sloan & Ross to represent her in this action, and entered into a written fee agreement with the law firm.

The litigation was lengthy, as dissolution proceedings sometimes are; Wife was unable to pay her attorney fees on a current basis, and by November 1986 had fallen seriously in arrears. Rather than withdraw as counsel, Friedman, Sloan & Ross accepted a promissory note for its attorney fees from Wife; the promissory note was secured by a deed of trust on her interest

---

[17]Friedman argues that if we affirm the judgment of the Court of Appeal, Friedman should be given an opportunity to meet the requirements of section 5125.1, subdivision (e). We disagree. Section 5125.1, subdivision (e) is intended for the benefit of a party to the marital community, not a party's lawyers. Section 5125.1, subdivision (e) specifically states that a court may dispense with the requirement of the other spouse's consent *"upon the motion of a spouse"* (italics added).

in certain community real property. Wife executed the promissory note after being advised by the law firm that she had the right to consult independent counsel concerning this transaction.

In December 1986, the parties reached a settlement, which was never implemented. The attorneys for both Wife and Husband successfully moved to withdraw from the case. Wife and Husband apparently remain married, and Wife has never paid her attorney fees.

Friedman, Sloan & Ross did not seek to enforce its deed of trust. But Husband then filed this lawsuit against Friedman, Sloan & Ross, seeking to quiet title and void the deed of trust not only as to his interest in the property but also as to Wife's interest.

Wife's financial arrangement with her attorneys is representative of a practice commonly utilized in family law cases. As one manual on California family law observes: "[T]he right to place a lien on the client's property [in dissolution actions] is often created in the fee agreement to provide security for the payment of fees. Typically, such a lien may be in the form of a second deed of trust on the client's real property, such as a residence." (Cal. Family Law Service (1986) *Termination of Marital Relationship* § 21:18, p. 330.)[1] Another legal text advises: "If the money [to pay the attorney a retainer in a dissolution proceeding] cannot be obtained from community bank accounts, the spouse should consider borrowing the money using community property as security . . . ." (3 Markey, Cal. Family Law Practice & Procedure (1991 rev. ed.) § 40.32[4], p. 40-80.)

The common practice of retaining counsel whose fees are secured by a deed of trust is, by its nature, not one that an economically stronger spouse will frequently wish to utilize. Rather, retaining counsel by executing a promissory note secured by a deed of trust on the spouse's interest in community real property is desirable primarily for those spouses who do not have access to substantial sums of money. For such spouses, the alternative

[1]Under the Rules of Professional Conduct and the decisions of this court, an attorney may ensure payment of fees by acquiring a promissory note secured by a deed of trust on the client's real property so long as (1) the attorney fully discloses the terms of the transaction to the client in an understandable fashion, (2) the terms are fair and reasonable, and (3) the client consents in writing after having had an opportunity to consult independent counsel. (Rules Prof. Conduct, rule 3-300; *Hawk v. State Bar* (1988) 45 Cal.3d 589, 593 [247 Cal.Rptr. 599, 754 P.2d 1096].)

Of course, even when an attorney holds a promissory note secured by a deed of trust, the attorney is not necessarily entitled to fees in any given amount. In this context, as well as others, clients are protected from overreaching by rule 4-200 of the Rules of Professional Conduct, the general law of contracts (see Civ. Code, §§ 1670.5, 1770, subd. (s)), and the inherent powers of the courts to review attorney-fee contracts to prevent unfairness (see *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 933 [211 Cal.Rptr. 77, 695 P.2d 164]).

may simply be that they will not be represented by a lawyer in dissolution proceedings.

Legal representation in dissolution cases is particularly important when child custody is contested or there are complex property issues, such as determining the value of the other spouse's business or professional practice. To effectively litigate such issues, an attorney must engage in extensive factual and legal investigations, and must charge correspondingly high attorney fees. Economically weaker spouses who cannot secure payment of attorney fees may be unable to conduct adequate discovery or to sufficiently prepare for motions that may be critical to the outcome of the case. Economically stronger spouses, on the other hand, can afford to protect their interests by funding legal efforts through current earnings or separate property. Thus, spouses who cannot secure their fee obligations through liens on community real property, and are thereby denied the ability to utilize their property to protect their interests, may be unable to meaningfully contest the demands of economically stronger spouses in family law actions.

In marital dissolution proceedings, a trial court may order either spouse to pay the other's attorney fees. (Civ. Code, § 4370.) But this trial court power does little to assist economically weaker spouses in obtaining representation because attorneys are naturally reluctant to accept a case when they know that payment for their services will be neither prompt nor certain, but will depend on a future and discretionary court order awarding fees in an uncertain and possibly inadequate amount. That court-ordered attorney fees in marital dissolution proceedings are often delayed and inadequate in amount was acknowledged in a recent report of the Judicial Council Advisory Committee on Gender Bias in the Courts, based on a survey conducted in 21 California counties. The report states: "Most counties reported that the majority of family law judges reserve attorney's fees at the time of the temporary order. . . . Most counties responded that where fees are ordered based upon the ability to pay, they are not adequate. Most respondents noted that this practice adversely affects the ability of the spouse with no income or a very low income, most often women, to retain counsel." (Advisory Com. Rep. for Judicial Council of Cal., Achieving Equal Justice for Women and Men in the Courts, Draft Rep., *Achieving Equal Justice in Family Law* (1990) p. 100.) The committee concluded that this situation had contributed to a "crisis in representation" in family law cases. (*Id.* at p. 106.)

II

Husband contends that the deed of trust given by Wife is void even as to her share of the community property under Civil Code section 5127 (here-

after section 5127). That statute provides in pertinent part: "[B]oth spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered . . . ."

Husband relies on the "plain meaning rule" in support of his argument. (See, e.g., *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155-156 [137 Cal.Rptr. 154, 561 P.2d 244].) He argues that one spouse's interest is "any interest," and that under the statute's plain language both spouses must join in an instrument encumbering that interest, or the instrument is entirely void.

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323]; accord, e.g., *Altaville Drug Store, Inc.* v. *Employment Development Department* (1988) 44 Cal.3d 231, 238 [242 Cal.Rptr. 732, 746 P.2d 871]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In doing so, we employ a number of canons of statutory construction, including, when appropriate, the plain meaning rule. But the separate canons are "merely aids to ascertaining probable legislative intent." (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10 [183 Cal.Rptr. 647, 646 P.2d 809].) No single canon of statutory construction is an infallible guide to correct interpretation in all circumstances. We have for many decades adhered to the rule that " '[t]he mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature . . . .' " (*In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]; accord, e.g., *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Thus, in construing a statute, the task of the court is to determine legislative intent; in doing so, the court should utilize those tools of interpretation that most clearly illuminate the legislative objective.

One "elementary rule" of statutory construction is that statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together. (*Hunstock* v. *Estate Development Corp.* (1943) 22 Cal.2d 205, 210 [138 P.2d 1, 148 A.L.R. 968].) We have long recognized the principle that even though a statute may appear to be unambiguous on its face, when it is considered in light of closely related statutes a legislative purpose may emerge that is inconsistent with, and controlling over, the language read without reference to the entire scheme of the law. (E.g., *Great Lakes Properties, Inc.* v. *City of El Segundo, supra,* 19 Cal.3d at pp. 155-156;

*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665].) The rule of in pari materia is a corollary of the principle that the goal of statutory interpretation is to determine legislative intent.

In this case, the surest guide to the intent of the Legislature is a statute that deals with the same subject matter as section 5127 and expresses the Legislature's approval of the long-standing practice of relying on community real property to secure attorney fees in dissolution cases.

In 1989, the Legislature enacted Code of Civil Procedure section 412.21. Subdivision (a) of Code of Civil Procedure section 412.21 (hereafter section 412.21(a)) provides in relevant part:

"[I]n an action for dissolution of marriage, . . . the summons shall . . . contain temporary restraining orders set forth in this section. Upon the filing of a petition for dissolution . . . and issuance of the summons and upon personal service of the petition and summons on the respondent . . . a temporary restraining order shall be in effect against both parties until the final decree is entered or the petition is dismissed, or until further order of the court:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(2) Restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, *real or personal*, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life and requiring each party to notify the other party of any proposed extraordinary expenditures . . . . However, *nothing in the restraining order shall preclude the parties from using community property to pay reasonable attorney's fees in order to retain legal counsel in the action.*" (Italics added.)

There can be no explanation of the last sentence of section 412.21(a)(2) except that the Legislature specifically intended that spouses have the power to use community property to pay attorney fees in dissolution actions. The Legislature, though not mandating that community property be used to pay attorney fees, clearly contemplated the practice and approved it. If the Legislature had been of the view that section 5127 precluded resort to community property to pay attorney fees, there would have been no reason to include the statement in question.

Moreover, section 412.21(a)(2) does not limit the community property that may be used to pay attorney fees to readily accessible or "liquid" community

personal property, as the majority suggests. Rather, the first sentence of the section expressly refers to both real and personal community property; the second sentence refers generally to community property, and does not state that only one type of community property may be used to pay attorney fees. The obvious conclusion is that when the Legislature in the last sentence of section 412.21(a)(2) used the phrase "community property" without limitation, it meant both types of community property. Because community real property is ordinarily not "liquid," the only practical means to use it to pay attorney fees is through an encumbrance.

It is the duty of this court to harmonize statutes on the same subject (e.g., *Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387; *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 746 [250 Cal.Rptr. 869, 759 P.2d 504]), giving effect to all parts of all statutes if possible (e.g., *Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d at p. 645). In applying that duty to the issue presented here, this court must give preference to a reasonable construction of section 5127 that harmonizes it with section 412.21(a).

Read literally and without regard to its underlying purpose, section 5127 appears to forbid what section 412.21(a) implicitly but unmistakably approves: a spouse's unilateral encumbrance of community real property to secure reasonable attorney fees, and thereby to obtain legal representation, in a marital dissolution action. Because section 5127 relates to conveyances and encumbrances of community real property in general, while section 412.21(a) refers specifically to the use of community property to retain counsel in marital dissolution proceedings, the two provisions can be harmonized as follows: Under sections 5127 and 412.21(a), the parties to a dissolution action may encumber community real property to the extent of their interests to secure reasonable attorney fees in a dissolution action, but they may not otherwise independently convey or encumber community real property after separation; and the parties to a continuing marriage may not do so at all without the written consent of the other spouse.[2]

Harmonizing the two provisions in this manner serves the purpose of section 412.21(a) by allowing what the Legislature expressly intended to permit. And, as I will show, it comports fully with the legislative purpose

---

[2]Husband suggests that the problems of economically weaker spouses in obtaining adequate representation are solved by Civil Code section 5125.1, subdivision (e), which empowers the trial court to dispense with the requirement of both spouses' consent to encumber or dispose of community real property when the "proposed transaction is in the best interest of the community" and consent is "arbitrarily refused." He is mistaken. For the reasons given by the majority, "[i]n most cases, . . . [Civil Code] section 5125.1, subdivision (e) may prove to be an illusory remedy for the economically weak spouse." (Maj. opn., *ante,* at p. 41.)

underlying section 5127, which is to protect one spouse from fraudulent or improvident expenditures by the other spouse during the continued existence of the marriage.

The predecessor to section 5127 was former Civil Code section 172a, enacted in 1917; it provided that "[t]he husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered; . . ." (Stats. 1917, ch. 583, § 2, pp. 829-830.)

This court discussed the purpose of former Civil Code section 172a in 1926, in connection with a parallel amendment to former Civil Code section 172, concerning alienation of community personal property. We said: "All that the legislature by these amendments did do or attempt to do was to cast about the interest of the wife in both the real and personal property of the community *during the continued existence of the marriage relation* added safeguards and protection *against the fraudulent or inconsiderate acts* of the husband . . . ." (*Stewart* v. *Stewart* (1926) 199 Cal. 318, 340 [249 P. 197], italics added; accord, e.g., *Strong* v. *Strong* (1943) 22 Cal.2d 540, 544 [140 P.2d 386]; *Morghee* v. *Rouse* (1964) 224 Cal.App.2d 745, 748 [37 Cal.Rptr. 112].)

In the years since we first construed former Civil Code section 172a, community property law has evolved. In 1927, the Legislature declared ownership of community property by both spouses to be "present, existing and equal." (Stats. 1927, ch. 265, § 1, p. 484.) In 1973, the Legislature gave "either spouse" management and control of community real and personal property. (Stats. 1973, ch. 987, § 15, p. 1901.)

The restriction that section 5127 imposes is the same as that imposed by its predecessor, former Civil Code section 172a. The only difference is that section 5127 imposes the restriction equally on both spouses rather than on the husband alone. There has been no change in the essential purpose of section 5127, namely, to protect one spouse from the other's fraudulent or improvident expenditures of community property "during the continued existence of the marriage relation . . . ." (*Stewart* v. *Stewart, supra*, 199 Cal. at p. 340.)

Legally, a marriage continues until the entry of a judgment of dissolution, and the parties have a continuing duty of good faith toward each other. (Civ. Code, §§ 4501, 5125, subd. (e).) Realistically, however, when the parties to a marriage have separated and commenced a dissolution lawsuit, their relations have fundamentally changed. (See *In re Marriage of Connolly*

(1979) 23 Cal.3d 590, 600 [153 Cal.Rptr. 423, 591 P.2d 911].) They are living apart, and they are legal adversaries. In such circumstances, the protective rationale of section 5127 is not frustrated by allowing spouses to encumber community real property to secure attorney fees. The interests of the parties are protected by the efforts of counsel and the equitable powers of the court.

Giving full effect to the legislative intent reflected in section 412.21(a) does not at all impair the purpose of section 5127, which is to protect nonconsenting spouses in ongoing marriages from fraudulent or ill-advised transfers of community real property. Accordingly, I would hold that under sections 412.21(a) and 5127 the parties to a dissolution action may encumber community real property to the extent of their interests to secure reasonable attorney fees in the dissolution action.[3]

In this case, Wife unilaterally encumbered her undivided one-half interest in community real property to secure attorney fees in her dissolution action against Husband. Since then, the parties have apparently decided to remain married, and Husband now contends that the encumbrance must be held entirely void. In accordance with the analysis set forth above, I would hold the encumbrance valid as to Wife's interest.

The security interest in Wife's share of the property was given in 1986, three years before the Legislature enacted section 412.21. But the purpose of section 5127, which was set forth in our cases long before the enactment of section 412.21, is to protect spouses in continuing marriages from the

---

[3]The majority contends that section 412.21(a) does not "create an exception" to section 5127, or impliedly repeal that section. These contentions miss the dissent's point. The dissent has shown that when section 5127 is interpreted in light of the legislative purpose to protect spouses in continuing marriages, and construed with a view toward harmonizing it with section 412.21(a), the conclusion is inescapable that the Legislature did not intend to bar spouses from using their interests in community real property to secure attorney fees in a dissolution action. No discussion of exceptions or implied repeal is necessary to resolve this issue.

The majority claims that harm could result under the dissent's approach if an economically stronger spouse encumbered his or her interest in the community residence to secure attorney fees, the spouse defaulted, the mortgage lender foreclosed, and the mortgage lender then brought an action for partition against the other spouse. (Maj. opn., *ante*, at pp. 44-45, fn. 15.) Although harm according to this scenario might occur in isolated cases, this possibility should be contrasted with the certainty that, under the majority's approach, injustice and hardship for economically weaker spouses will result in an entire class of cases when the spouses' inability to use their property to secure attorney fees deprives them of effective legal representation.

Finally, the majority contends that under the dissent's approach the trial court's role might be made more difficult in some cases. Although the trial court's duty of equal division of community assets under Civil Code section 4800 might be made more complicated after an encumbrance, this factor is no reason to deprive spouses of their rights.

fraudulent and improvident acts of their marital partners, not to prevent parties to a dissolution lawsuit from protecting their interests. The Legislature's enactment of section 412.21(a) does not alter the meaning of section 5127, but illuminates the Legislature's understanding of the statutory scheme it created as not precluding resort to community real property to secure attorney fees in a dissolution action. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [128 Cal.Rptr. 427, 546 P.2d 1371] [it is proper to look to a subsequent expression of legislative intent in construing a prior statute].) Irrespective of the date of enactment of section 412.21, it would not serve the purpose of section 5127 to interpret section 5127 to preclude encumbrances given to secure attorney fees after the parties have separated. Therefore, section 5127 should not be applied in this case to bar the encumbrance. (See 2A Sutherland, Statutory Construction (4th ed. 1984) § 54.04, p. 570 ["where there is doubt about how inclusively a statute should be applied, it will be construed to apply only so far as is needed to remedy the perceived mischief"].)

For these reasons, I would reverse the judgment of the Court of Appeal.